IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| **IN RE: SUBPOENA TO VALVE CORPORATION**<br><br>Underlying Litigation:<br><br>*In re Apple iPhone Antitrust Litigation,*<br>    No. 4:11-cv-6714<br><br>U.S. District Court for the Northern District Of California | Misc. Case No. 2:24-mc-00026-TL<br><br>**MOTION TO COMPEL**<br><br>**NOTE ON MOTION CALENDAR:**<br>**May 3, 2024** |

APPLE INC.'S MOTION TO COMPEL

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND .............................................................................................................................1

JURISDICTION ..............................................................................................................................5

ARGUMENT ...................................................................................................................................6

    I.    Apple's Motion to Compel Should Be Granted ................................................................... 6

        A.    The Northern District of California Has Already Found Apple Has A Substantial Need for Documents Responsive to Request 2. ............................................................................... 6

        B.    Apple Has a Substantial Need to Depose Valve About PC Game Store Competition. ... 8

        C.    Apple's Requests Do Not Pose Any Undue Burden on Valve ..................................... 10

        D.    Apple's Motion to Compel is Timely ........................................................................... 11

CONCLUSION ..............................................................................................................................12

**TABLE OF AUTHORITIES**

**Cases**     **Page(s)**

*Aguayo-Becerra v. Goodman Conveyor Co.*,
  No. C15-1516, 2017 U.S. Dist. LEXIS 164830 (W.D. Wash. Oct. 4, 2017) ...........................9

*In re Apple iPhone Antitrust Litig.*,
  No. 11-cv-06714 (N.D. Cal.) ................................................................................... *passim*

*Chevron Corp. v. Donziger*,
  No. 12-mc-80237, 2013 WL 4536808 (N.D.Cal. Aug. 22, 2013) ...........................................5

*Epic Games, Inc. v. Apple Inc.*,
  559 F. Supp. 3d 898 (N.D. Cal. 2021) ................................................................................2, 7

*Epic Games, Inc. v. Apple, Inc.*,
  67 F.4th 946 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 681 (2024), *cert. denied*,
  144 S. Ct. 682 (2024) ........................................................................................................2, 3, 7

*Garner Const., Inc. v. Int'l Union of Operating Engineers*,
  No. C077-775, 2007 WL 4287292 (W.D. Wash. Dec. 4, 2007)..............................................5

*In re Suzuki*,
  No. CIV. 14-00516, 2014 WL 6908384 (D. Haw. Dec. 5, 2014).............................................5

*In re Valve Antitrust Litigation*,
  21-cv-00563 (W.D. Wash.)....................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)..................................................................................................................6

Fed. R. Civ. P. 34(c) ......................................................................................................................1

Fed. R. Civ. P. 37(a)(1)..................................................................................................................1

Fed. R. Civ. P. 45 ..................................................................................................................1, 5, 11

## PRELIMINARY STATEMENT

This proceeding arises out of class action antitrust litigation brought against Apple Inc. ("Apple") in the U.S. District Court for the Northern District of California. *See In re Apple iPhone Antitrust Litig.*, No. 11-cv-06714 (N.D. Cal.). In that case, Apple stands accused of monopolizing apps and in-app purchases by requiring distribution of apps through its App Store. Absent these restraints, Plaintiffs say, competition among app stores would flourish on Apple's devices—just as it does between the many digital stores that currently distribute video games to PC and Mac users.

Valve Corporation ("Valve") operates Steam, the largest digital game store on PC and Mac. As the Magistrate Judge overseeing the underlying litigation has found, how Steam and other PC game stores compete on price, quality, and selection to attract game developers and users is directly relevant to the "effects" of Apple's App Store conduct "on competition"—and has previously compelled Valve to produce documents about Steam for that very reason. Yet despite this prior ruling and Steam's undoubted relevance to this case, Valve refuses to provide additional documents and deposition testimony concerning the very same issues of markets, pricing, and competitive effects that motivated the court's prior ruling. Accordingly, Apple submits this Motion to Compel for an Order pursuant to Fed. R. Civ. P. 34(c), 37(a)(1), and 45(d)(2)(B)(i) to: (1) compel the production of certain documents from Valve and (2) compel the appearance and 30(b)(6) testimony of Valve at deposition.

## BACKGROUND

The underlying litigation has been pending since 2011 before U.S. District Judge Yvonne Gonzalez Rogers and U.S. Magistrate Judge Thomas S. Hixson in the Northern District of California. This class action alleges that Apple has unlawfully monopolized alleged markets for

iOS apps by requiring that all such apps be distributed through Apple's App Store, allegedly causing developers to pay Apple a higher-than-competitive commission rate for app distribution, which they purportedly pass on to consumers in the form of higher app and in-app purchase prices. *See In re Apple iPhone Antitrust Litig.*, No. 4:11-cv-6714, Third Amended Compl., ECF No. 229 ¶¶ 4-5 (N.D. Cal. Sept. 17, 2020) (Castle Decl. Exhibit 11). These claims mirror those brought by the developer Epic Games, Inc. ("Epic"), which were largely rejected following a three-week bench trial in 2021, and later affirmed on appeal. *See Epic Games, Inc. v. Apple, Inc.,* 67 F.4th 946, 966 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 681 (2024), and *cert. denied*, 144 S. Ct. 682 (2024). Judge Gonzalez Rogers and Magistrate Judge Hixson are intimately familiar with the facts of these complex antitrust cases, and Magistrate Judge Hixson has issued at least eighteen orders deciding at least 25 discovery disputes that arose in the coordinated discovery proceedings required of these three actions, including disputes involving third party subpoenas.

Relevant here, Valve operates a digital game store, Steam. Steam is the most popular digital game store on PC platforms,[1] where it competes against other stores including Epic's Epic Games Store, the Microsoft Store, and Apple's Mac App Store. *See generally Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 978-79 (N.D. Cal. 2021) (providing overview of PC game stores). On December 9, 2020, Apple served Valve with a Rule 45 subpoena (the "Document Subpoena") (Castle Decl. Exhibit 1).[2] Valve interposed objections, *see* Castle Decl. Exhibit 3, and the parties met and conferred numerous times regarding the scope of the Document Subpoena. Despite agreeing to produce certain information in response to the Document Subpoena, Valve

---

[1] *See, e.g.,* Anurag Chawake, *What is Steam? Everything you need to know about Valve's PC gaming platform*, THE INDIAN EXPRESS (Dec. 20, 2023), https://indianexpress.com/article/technology/techook/what-is-steam-everything-you-need-to-know-about-valves-pc-gaming-platform-9062555/; Nick Statt, *Epic vs. Steam: The Console War Reimagined on the PC*, THE VERGE (Apr. 16, 2019), https://bit.ly/3oM9uhT.

[2] Details relating to the factual background of the parties' dispute is cited from exhibits attached to the Declaration of Nicole L. Castle ("Castle Decl.")

APPLE INC.'S MOTION TO COMPEL

MCDERMOTT WILL & EMERY
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

refused to produce certain information responsive to Requests 2 and 32. Relevant to the instant Motion, Request 2 sought information sufficient to show Valve's revenues by game on Steam, including the commissions that game developers paid to Valve.

In an effort to narrow the request and compromise, Apple agreed to limit this game-level data from all games on Steam to a list of 436 games. Apple and Valve submitted a joint letter brief to U.S. Magistrate Judge Thomas S. Hixson regarding the dispute over Request 2 on February 18, 2021. *See In re Apple iPhone Antitrust Litig.*, 4:11-cv-6714, Discovery Letter Brief, ECF No. 413 (N.D. Cal. Feb. 18, 2021) (Castle Decl. Exhibit 5). On February 24, 2021, Judge Hixson held a hearing on the motion to compel and that same day issued an order compelling Valve to produce the requested information. *See In re Apple iPhone Antitrust Litig.*, 4:11-cv-6714, Order, ECF No. 418 (N.D. Cal. Feb. 24, 2021) (Castle Decl. Exhibit 6). Judge Hixson held that "Apple has shown that it has a substantial need for this information to obtain evidence in support of its arguments concerning market definition and the effects of competition, and it cannot obtain this information elsewhere without undue burden." *See id*. at 4. Subsequently, Valve produced information responsive to among other requests, Request 2.

Since that order, Valve and Steam have only become more relevant to the underlying litigation. In *Epic*, the Court found Steam's commission rates to be "a vivid illustration" of the effects of competition on prices. *Epic*, 67 F.4th at 985. And Plaintiffs sought and obtained class certification based on an expert report that explicitly identifies the "Windows PC game[s]" environment as "a benchmark" for the world "but-for" Apple's alleged anticompetitive conduct. *See In re Apple iPhone Antitrust Litig.*, 4:11-cv-6714, Order, ECF No. 789 at 21 (N.D. Cal. Feb. 2, 2024) (Castle Decl. Exhibit 12). On February 2, 2024, Judge Gonzalez Rogers granted plaintiffs' second motion for class certification, denied Apple's *Daubert* motion to exclude the

APPLE INC.'S MOTION TO COMPEL

MCDERMOTT WILL & EMERY
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

Plaintiffs' expert testimony, and requested that the parties file a joint statement with a proposed schedule for the balance of the litigation. *See* Castle Decl. Exhibit 12.

Discovery remains open, and so on March 27, 2024, Apple met and conferred again with counsel for Valve requesting that Valve produce updated data for certain requests in the Document Subpoena. In particular, rather than pull and produce the game-level revenue data that Valve had previously produced in response to Request 2, Apple requested that Valve provide it with aggregated information identifying Steam's effective commission rate by year for 2021, 2022, and 2023, and provide the total number of games for 2023 that were subject to each of Steam's three commission tiers (e.g., 30%, 25%, and 20%). The parties have met and conferred, but despite the fact that this information is significantly less burdensome for Valve to produce than the granular data it provided previously and less commercially sensitive, Valve has not agreed to comply with this narrow request.

Separately, on July 6, 2021, Apple served Valve with a Rule 45 subpoena (the "Deposition Subpoena") seeking a Rule 30(b)(6) deposition. *See* Castle Decl. Exhibit 2. The parties met and conferred regarding the scope of the 30(b)(6) deposition and Valve offered that it would be available "for deposition on August 6." *See* Castle Decl. Exhibit 7. Ultimately, the parties mutually agreed on July 29, 2021 to postpone the deposition with the understanding that Apple was not withdrawing the Deposition Subpoena. *See* Castle Decl. Exhibit 8. As Apple's attorney stated: "Although there is no immediate need for Valve to comply with the subpoena, we still do expect that Valve will comply with the subpoena and provide testimony on the topics at a later date." *Id.* Counsel for Valve agreed stating: "We understand the subpoena isn't withdrawn, but that the parties agree to take any deposition off calendar for now." *Id.* On March 27, 2024, after the Court granted class certification, Apple met and conferred with counsel for Valve and

requested a new date for the 30(b)(6) deposition to take place before the end of fact discovery on May 13, 2024.³  *See* Castle Decl. Exhibit 9.  Since then, the parties have engaged in meet and confers, during which time Apple has agreed to limit the scope of the Deposition Subpoena from ten topics to only two (specifically, Apple now seeks testimony relating to only Topics 1 and 2 in the Deposition Subpoena).  *See id.*; Castle Decl. ¶ 3.  These topics generally cover: (1) the competitive landscape for PC game stores including information on the different business models and commission rates and fees charged by Steam and its competitors, as well as competition that Steam faces from specialty stores and direct distribution; and (2) Steam's relationships with game developers and policies for game distribution.  Despite Apple's good faith efforts to limit the scope, Valve has not agreed to provide Apple with dates for the deposition.  *See* Castle Decl. Exhibit 10.

For the reasons stated in Apple's accompanying Motion to Transfer the Motion to Compel, this Court should transfer this motion to the Northern District of California.  The Document and Deposition Subpoenas (and Valve's objections) implicate issues of relevance best suited for adjudication by the issuing court familiar with this case.  In the event this Court chooses not to transfer, this Court should grant Apple's motion to compel and order Valve to: (1) produce updated information responsive to Request 2; and (2) make a witness available for the 30(b)(6) deposition before May 13, 2024.

## JURISDICTION

This Court has jurisdiction over this matter because the place for compliance with the Subpoenas is the Western District of Washington.  Fed. R. Civ. P. 45(c)(i).  Venue is proper in this

---

³ Pursuant to Judge Gonzalez Rogers' order granting class certification, the parties filed a proposed joint schedule (the "Joint Schedule") on February 16, 2024 which sets a discovery deadline of May 13, 2024.  *See In re Apple iPhone Antitrust Litig.*, 4:11-cv-6714, Joint Proposed Schedule, ECF No. 791 (N.D. Cal. Feb. 16, 2024) (Castle Decl. Exhibit 15).  Although the court has not yet ruled on the Joint Schedule, the parties have been operating under this schedule since it was filed with the Court.

District because Valve's principal place of business is Bellevue, Washington, and because this is the District where the Subpoenas require compliance.

## ARGUMENT

### I. Apple's Motion to Compel Should Be Granted

This Court should transfer Apple's Motion to Compel to the Northern District of California. But, to the extent this Court denies Apple's Motion to Transfer, this Court should grant Apple's Motion to Compel. Federal Rule 45, which governs subpoenas, provides that where a party has objected to the subpoena, the party seeking documents may move to compel production of the documents. *Garner Const., Inc. v. Int'l Union of Operating Engineers*, No. C077-775, 2007 WL 4287292, at *1 (W.D. Wash. Dec. 4, 2007) (citing Fed. R. Civ. P. 45(c)(2)(B)). Upon a showing by the party seeking to enforce the subpoena that they have a substantial need for the discovery sought, any person seeking to escape the requirements of "a subpoena bears the burden of showing why a discovery request should be denied." *In re Suzuki,* No. CIV. 14-00516, 2014 WL 6908384, at *2 (D. Haw. Dec. 5, 2014); *see also Chevron Corp. v. Donziger*, No. 12-mc-80237, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013). Here Apple has a substantial need for the documents and testimony from Valve for the exact same reasons that Judge Hixson previously found. The Court should overrule Valve's burden and timeliness objections and grant Apple's requests.

#### A. The Northern District of California Has Already Found Apple Has A Substantial Need for Documents Responsive to Request 2.

Request 2 seeks documents sufficient to show Valve's yearly sales, revenue, and profits from games sold on Steam. Fed. R. Civ. P. 26(b)(1) provides in relevant part: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Apple's discovery requests fall well within Rule 26's scope.

Nonetheless, as explained above, Apple significantly narrowed the request to seek only aggregated information relating to the commission rates charged by Valve rather than the detailed game level data that the Northern District of California previously ordered Valve to produce in this action. *See* Castle Decl. Exhibit 6.

This information from Valve is relevant for at least two reasons. First, the requested data is relevant in order to rebut Plaintiffs' claims about the effect of Apple's alleged conduct on commission rates. Plaintiffs' economic expert, Dr. Rosa Abrantes-Metz, has described the "Windows PC game" environment in which Steam operates as a competitive "benchmark" for iOS app distribution if multiple app stores existed on Apple's devices. *See In re Apple iPhone Antitrust Litig.*, 4:11-cv-6714, Renewed Mot. for Class Certification, ECF No. 683 at 7 (N.D. Cal. Mar. 1, 2023) (Castle Decl. Exhibit 13); *see also* Castle Decl. Exhibit 12 at 21-23. As Judge Hixson explained in his prior order, Steam's data—and in particular data sufficient to show the commission rate it charges—is therefore "relevant to the effects of competition" including "whether the availability of other stores does in fact affect commissions in the way Plaintiffs allege":

> Plaintiffs allege that Apple's 30% commission on sales through its App Store is anti-competitive and that allowing iOS apps to be sold through other stores would force Apple to reduce its commission to a more competitive level. Well, Steam is one of the largest video game stores for PCs, and it too charges a 30% commission. Epic Games opened its video game store for PCs in December 2018, and Epic charges a commission that is lower than 30%. … Apple [therefore] seeks to take discovery into whether the availability of other stores does in fact affect commissions in the way Plaintiffs allege.

Castle Decl. Exhibit 6 at 3. Judge Gonzalez Rogers' opinion in *Epic* only underscores the relevance of Steam and other PC game stores to this litigation, noting that Steam's decision to partly reduce its 30% commission rate after the entry of the Epic Games Store with a (unprofitable

and litigation-driven) 12% rate was a "vivid illustration" of the effects of app store competition on prices. *Epic*, 559 F. Supp. 3d at 996.

Second, the information is relevant to support Apple's arguments that the App Store competes with other platforms, particularly for game transactions. Valve's digital distribution service, Steam, is the most popular digital game distributor on the PC platform. *See supra* n. 1. Game developers can distribute apps on Apple's App Store, the Epic Games Store, Valve's Steam, or through various other digital distribution channels, including Android and Google Play. As Judge Hixson previously recognized, "the aggregate financial information sought by RFP 2 is relevant to market definition, which is a major issue in dispute in this litigation," particularly given that "Apple is pushing for a broadly defined … market that includes distribution on other platforms" and that includes Steam, whereas "plaintiffs are pushing for a narrowly defined market that consists only of apps distributed on the iOS platform." Castle Decl. Exhibit 6 at 2–3.

In sum, the sales and commission data Apple requests through Request 2 is relevant to "hotly disputed" and "core" issues in this litigation. *Id.* at 3. Valve has not claimed it is available from any source other than itself. *See id.* at 5. Just as before, then, "Apple has shown that it has a substantial need for this information to obtain evidence in support of its arguments concerning market definition and the effects of competition, and it cannot obtain this information elsewhere without undue burden." *Id.* at 4.

**B. Apple Has a Substantial Need to Depose Valve About PC Game Store Competition.**

For similar reasons, Apple has also shown a substantial need for Valve's testimony about competition in the PC game store environment. Apple issued a Deposition Subpoena to Valve in July of 2021, but shortly thereafter, the parties mutually agreed to postpone the deposition until after the class certification decision was ordered. In agreeing to postpone the deposition, Apple

made clear that it was not lifting Valve's obligation to comply with the Deposition Subpoena at a later date should it become necessary. Valve however has now refused to schedule the deposition. The Court should compel Valve to make a witness available for deposition before May 13.

Since issuing its Deposition Subpoena, Apple has agreed to limit Valve's testimony to certain subsections of Topics 1 and 2 relating to: (1) the competitive landscape for PC game stores including information on the different business models and commission rates and fees charged by Steam and its competitors, as well as competition that Steam faces from specialty stores and direct distribution (Topics 1.B–G); and (2) Steam's relationships and agreements with game developers and policies for game distribution (Topics 2.A–C).[4] This information again goes primarily to "the effects of" Apple's alleged App Store restraints on "competition." Castle Decl. Exhibit 6 at 3. Notably, plaintiffs have put forth an expert model that purports to calculate the commission rate that would prevail on iOS stores absent Apple's alleged conduct. But it makes crucial simplifying assumptions, including that there would be only two stores, selling the exact same products, offering homogeneous services, and charging only a "single" and "identical" commission rate. *See* Castle Decl. Exhibit 12 at 18-19. Valve's first-hand testimony about the real-world effects of competition from multiple stores in the PC game environment—which, as noted above, Plaintiffs' expert has described as a competitive "benchmark" for iOS app distribution absent Apple's conduct—would help the jury assess whether Plaintiffs' expert's assumptions bear any relation to reality and whether her opinions about Apple's but-for commission rate should be accepted.

Moreover, Valve's deposition testimony would also help the jury assess whether the rates that prevail in the PC game environment are truly caused by competition (as Plaintiffs and their

---

[4] Apple has told Valve that it is not seeking testimony on topics 1.I., 1.J., 1.L, 1.M, 1.N, and 2.D. Apple would also forego testimony on topic 1.A (regarding Valve's financial information) if Valve agreed or were ordered to comply with Apple's Request 2.

9

APPLE INC.'S MOTION TO COMPEL

MCDERMOTT WILL & EMERY
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

expert claim) or are instead just the by-product of Epic Games' multi-front campaign to alter Apple's and Google's App Store policies. Judge Gonzalez Rogers has previously held that commission rates influenced by "litigation strategy" are not appropriate benchmarks. *See In re Apple iPhone Antitrust Litig.*, 4:11-cv-6714, Order, ECF No. 630 at 5 (N.D. Cal. Mar. 29, 2022) (Castle Decl. Exhibit 14) (rejecting Epic Games Store's unprofitable 12% rate as a benchmark for competitive commission rates). Documents published recently as part of Valve's own antitrust lawsuit, for instance, show that Epic's CEO Tim Sweeney encouraged Valve to lower Steam's commission rate in order to pressure Apple to open up iOS to App Store competition and reduce its headline 30% rate. *See Court Docs Reveal Epic CEO's Anger at Steam's 30%*, Ars Technica (March 14, 2024), https://arstechnica.com/gaming/2024/03/you-a-holes-court-docs-reveal-epic-ceos-anger-at-steams-30-fees/. Because information about Valve's decision-making with respect to Steam's own commission rates and other business model decisions is only available from Valve, Apple has established a substantial need for this testimony. *See In re Apple iPhone Antitrust Litig.*, No. 11-cv-06714, 2020 WL 5993223, at *3 (N.D. Cal. Oct. 9, 2020) ("'[S]ubstantial need' and 'undue hardship' requirements [are] met where documents [are] relevant and [party] could not reasonably obtain them elsewhere.") (internal citations and quotations omitted).

### C. Apple's Requests Do Not Pose Any Undue Burden on Valve

In deciding Rule 45 motions, courts also consider "relevance, the need of the party for the discovery, the breadth of the discovery request, the time period covered by it, the particularity with which the information requested is described and the burden imposed." *Aguayo-Becerra v. Goodman Conveyor Co.*, No. C15-1516, 2017 U.S. Dist. LEXIS 164830, at *3 (W.D. Wash. Oct. 4, 2017). Given that Apple has requested highly relevant and narrow requests, Valve cannot establish undue burden.

First, any purported administrative burden to Valve is not "undue." As described above, Apple's requests are tailored to seek necessary information that it can only obtain from Valve. Moreover, Apple's efforts to meet and confer have significantly minimized any burden on Valve. With respect to the requested data, Apple has agreed to accept aggregated data that should be *less burdensome to produce* than the game-level data that Judge Hixson previously ordered and that Valve previously produced. As for the deposition, Valve protests that it will be unduly burdensome to prepare a witness on narrowed topics Apple is seeking. But the topics on which Apple seeks testimony—in general terms, competition among PC game stores like Steam, the Epic Games Store, and others, and Steam's business model as it relates to that competitive landscape— overlaps closely with the subject of antitrust litigation alleging Valve has monopolized PC game stores, in which Valve has just completed extensive fact discovery in which multiple witnesses were no doubt deposed on these exact same topics (and undoubtedly more). *See, e.g., In re Valve Antitrust Litigation*, 21-cv-00563, Order, ECF No. 172 (W.D. Wash. Nov. 11, 2023) (explaining that over 30 individuals have been deposed in this case).

Second, any purported concern regarding confidentiality does not justify Valve's refusal to comply with the Subpoenas. Indeed, Judge Hixson has already rejected this argument, compelling Valve to produce documents because "the protective order in this action is sufficient to protect this information even if it were confidential to the third party." *See* Castle Decl. at 5.

**D. Apple's Motion to Compel is Timely**

The Court should also reject any objection based on the timeliness of Apple's motion or requests. Discovery in the underlying case has not yet closed, so compelling documents and testimony from Valve will not disrupt the court schedule issued by the Northern District of California. As explained above, in the Court's class certification order, Judge Gonzalez Rogers

11

APPLE INC.'S MOTION TO COMPEL

MCDERMOTT WILL & EMERY
444 WEST LAKE STREET, SUITE 4000
CHICAGO, ILLINOIS 60606-0029
TELEPHONE: 312.372.2000

ordered the parties to "meet and confer on a schedule for the balance of the action." *See* Castle Decl. Exhibit 12 at 27. The Joint Schedule sets a discovery deadline of May 13, 2024. *See In re Apple iPhone Antitrust Litig.*, 4:11-cv-6714, Joint Proposed Schedule, ECF No. 791 (N.D. Cal. Feb. 16, 2024) (Castle Decl. Exhibit 15). To the extent there is any question as to whether fact discovery remains open, this decision should be determined by the court in the underlying litigation and is yet another reason that the instant motion should be transferred to the Northern District of California.

Moreover, any contention from Valve that Apple unduly delayed in seeking this information ignores the posture of the underlying litigation. To avoid burdening a third party unnecessarily, Apple waited for the outcome of the renewed class certification motion and related *Daubert* motions before reengaging with Valve on the Subpoenas—precisely as required by Rule 45. *See* Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.") Had Judge Gonzalez Rogers granted Apple's *Daubert* motion against Plaintiffs' expert, Dr. Abrantes-Metz, or had she denied class certification, Apple likely would not have had to seek these documents and deposition testimony from Valve. It only became necessary for Apple to restart its negotiations with Valve regarding the Subpoenas after the February 2, 2024 class certification decision.

**CONCLUSION**

For the reasons stated herein, Apple respectfully requests that the Court grant its Motion to Transfer or, in the alternative, grant Apple's Motion to Compel.

Dated: April 12, 2024

MCDERMOTT WILL & EMERY LLP

I certify that this memorandum contains 3,907 words, in compliance with the Local Civil Rules.

By: _/s/ Daniel-Charles V. Wolf_____
Daniel-Charles V. Wolf, WBSA #48211
444 W. Lake St., Ste. #4000
Chicago, IL 60606-0029
(312)372-2000
dcwolf@mwe.com

John J. Calandra (motion for admission *pro hac vice* forthcoming)
Nicole L. Castle (motion for admission *pro hac vice* forthcoming)
1 Vanderbilt Avenue
New York, New York 10017
Tel: 212-547-5400
Fax: 212-547-5444
jcalandra@mwe.com
ncastle@mwe.com

Elizabeth A. Rodd (motion for admission *pro hac vice* forthcoming)
200 Clarendon Street, Floor 58
Boston, MA 02116
Tel: 617-535-4040
Fax: 617-535-3800
erodd@mwe.com

*Attorneys for Apple Inc.*

**CERTIFICATION**

I certify that prior to making this submission the parties conferred to attempt to resolve this discovery dispute in accordance with Fed. R. Civ. P 37(a) and Local Rule 37(1).

                                               */s/ Daniel-Charles V. Wolf*
                                               Daniel-Charles Wolf
                                               *Attorney for Apple Inc.*

**CERTIFICATE OF SERVICE**

I, Daniel-Charles Wolf, an attorney, hereby certify that on April 12, 2024, I filed this document with the Clerk of the Court through electronic mail, and served the foregoing Motion via electronic mail to the following parties, through counsel:

Nathan M. Buchter
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
Telephone: 215.299.2000
Facsimile: 215.299.2150
nbuchter@foxrothschild.com

*Attorney for Valve Corporation*

/s/ Daniel-Charles V. Wolf
Daniel-Charles Wolf

*Attorney for Apple Inc.*