# EXHIBIT 2

# UNITED STATES DISTRICT COURT
for the
Northern District of California

|  |  |  |
|---|---|---|
| .<br>CAMERON ET AL v. APPLE INC.<br>IN RE APPLE IPHONE ANTITRUST LITIGATION | )<br>)<br>)<br>)<br>)<br>) | Civil Action Nos.<br>4:19-CV-03074-YGR<br>4:11-CV-06714-YGR |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To:     Valve Corporation
(c/o Corpserve, Inc. 1001 4th Ave, Suite 4500, Seattle, WA 98154)
*(Name of person to whom this subpoena is directed)*

☒ **Testimony**: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. The deposition will be recorded by a stenographer or court reporter, will be recorded by video and audio means, and may also be recorded by instant display of the stenographic record. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

See Attachment A

| Place: By remote audio-video conference OR as otherwise agreed. | Date and Time:<br><br>July 26, 2021 at 9am PT<br>OR as otherwise agreed. |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: July 6, 2021

*CLERK OF COURT*
                                                                 OR
_____                      */s/ Nicole Castle*
*Signature of Clerk or Deputy Clerk*                  *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Apple Inc. , who issues or requests this subpoena, are:

Nicole Castle, 340 Madison Avenue, New York, NY 10173, ncastle@mwe.com, (212) 547-5480

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).



Civil Action Nos. 4:11-CV-06714-YGR, 4:19-CV-03074-YGR

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ on *(date)* _____

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____   My fees are $ _____   My fees are $ _____   _____

I declare under penalty of perjury that this information is true.

Date: _____                     Date: _____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc.:



## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).


American LegalNet, Inc.
www.FormsWorkFlow.com

**ATTACHMENT A**

**FRCP 30(b)(6) DEPOSITION NOTICE TO VALVE CORPORATION**

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6), Valve Corporation ("you" or "your") shall designate one or more officers, directors, managing agents or other persons who are most qualified to testify on its behalf with respect to the topics identified below.

The deposition will be conducted before an officer qualified to administer oaths and take depositions and will be recorded stenographically and videographically. All parties are invited to attend and participate to the extent permitted by the Federal Rules of Civil Procedure.

**DEFINITIONS**

The following definitions apply to the deposition topics listed below.

1. The following rules of construction shall apply to all topics:

    a. the connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the deposition topics all topics that might otherwise be construed to be outside of its scope;

    b. the use of the present or past tense shall be construed to include both the present and past tenses as necessary to bring within the scope of the deposition topics all responses that might otherwise be construed to be outside of its scope;

    c. "**any**" and "**each**" shall be construed to include and encompass "**all**"; and

    d. the use of the singular form of any word includes the plural and vice versa.

2. "**ADVERTISING**" shall mean the in-APP presentation of third-party promotional content in exchange for payment.

3. "**ANDROID**" shall mean Google's mobile operating system.

4. "**APP**" shall mean a software application for a HANDHELD DEVICE or NON-HANDHELD DEVICE.

5. "**APP DEVELOPER**" shall mean any PERSON who developed one or more APPS.

6. "**APP MARKETPLACE**" shall mean any online storefront where APPS are offered for download and/or purchase. This term shall include, without limitation, Google Play, the Samsung Galaxy Store, Android Market, DEFENDANT'S iOS and Mac App Stores, the Amazon Appstore, Amazon Underground, the Microsoft Store for Xbox, Windows Store, and Windows Phone Store, the Epic Games Store, Steam, Origin, and online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo. For the avoidance of doubt, the phrase "**YOUR APP MARKETPLACE**" shall refer to STEAM.

7. "**COALITION FOR APP FAIRNESS**" shall mean the Coalition for App Fairness (INCLUDING Open Mobile Platforms Coalition), or any of its predecessor or successor companies, members, subsidiaries, corporate affiliates, officers, directors, employees, representatives, consultants, agents, servants, attorneys, accountants, and any other PERSON or entity acting on its behalf, or any PERSON or entity that served in any such role at any time.

8. "**COMMUNICATION**" shall include, without limitation, any transmission or transfer of information of any kind, whether orally, electronically, in writing, or in any other manner, at any time or place, and under any circumstances whatsoever.

9. "**CONCERNING**" a given subject shall mean: directly or indirectly comprising, concerning, constituting, containing, discussing, embodying, evidencing, exhibiting, identifying, mentioning, negating, pertaining to, recording, regarding, reflecting, relating to, showing, or supporting a given subject matter.

10. "**DEFENDANT**" shall mean Apple Inc.

11. "**DEVICE**" shall mean any **HANDHELD DEVICE** or **NON-HANDHELD DEVICE.**

12. "**DOCUMENT**" and "**DOCUMENTS**" shall have the full meaning ascribed to those terms under Rule 34 of the Federal Rules of Civil Procedure and shall include, without limitation, any and all drafts; COMMUNICATIONS; memoranda; records; REPORTS; books;

2

records, REPORTS, and/or summaries of personal conversations or interviews; diaries; presentations; slide decks; graphs; charts; spreadsheets; diagrams; tables; photographs; recordings; tapes; microfilms; minutes; records, REPORTS, and/or summaries of meetings or conferences; press releases; blog posts; stenographic handwritten or any other notes; work papers; checks, front and back; check vouchers, check stubs, or receipts; tape data sheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced; and any paper or writing of whatever description, INCLUDING information contained in any computer although not yet printed out. Any production of electronically stored information shall include the information needed to understand such information. The term "DOCUMENT" or "DOCUMENTS" further includes all copies where the copy is not identical to the original.

13. "**EXTERNAL PRODUCTS**" shall mean digital products and services purchased outside of an APP (such as through an APP DEVELOPER's website or on another platform) that one may use within an APP.

14. "**HANDHELD DEVICE**" shall mean any smartphone, tablet, or portable MP3 music player.

15. "**INCLUDING**" shall not be construed as limiting any request, and shall mean the same as "including, but not limited to."

16. "**IN-APP PRODUCT**" shall mean any feature, service, or functionality that can be enabled or unlocked within an APP in exchange for a fee, INCLUDING subscriptions, in-game currencies, game levels, access to premium content, or unlocking a full version of an APP.

17. "**MALWARE**" shall mean APPS and other software that could put users, user data, or devices at risk, INCLUDING computer viruses, worms, trojans, ransomware, scareware, spyware, phishing apps, backdoors, hostile downloaders, mobile billing fraud apps (including SMS fraud, call fraud, and toll fraud), and click fraud apps.

18. "**NAMED CONSUMER PLAINTIFF**" shall mean a named plaintiff in *Pepper v. Apple Inc.*, Case No. 4:11-cv-06714-YGR (N.D. Cal.), and *Lawrence v. Apple Inc.*, Case No. 4:19-

cv-02852-YGR (N.D. Cal.), INCLUDING: Edward W. Hayter, of Brooklyn, NY; Edward Lawrence, of California; Robert Pepper, of Chicago, IL; Stephen H. Schwartz, of Ardsley, NY; and Eric Terrell, of Oakland, CA, and any representatives, consultants, agents, servants, attorneys, accountants, or any other person or entity acting on their behalf.

19. **"NAMED DEVELOPER PLAINTIFF"** shall mean a named plaintiff *in Cameron v. Apple Inc.*, Case No. 419-cv-03074-YGR (N.D. Cal.), and *Sermons v. Apple Inc.*, Case No. 4:19-cv-03796-YGR (N.D. Cal.), INCLUDING: Donald R. Cameron, of California; Barry Sermons, of Georgia; and Pure Sweat Basketball, Inc., an Illinois corporation, and any representatives, consultants, agents, servants, attorneys, accountants, or any other person or entity acting on their behalf.

20. **"NON-HANDHELD DEVICE"** shall mean laptop computers, desktop computers, or video game consoles.

21. **"PERSON"** shall include, without limitation, natural persons, corporations, partnerships, business trusts, associations, and business or other entities, and any officer, director, employee, partner, corporate parent, subsidiary, affiliate, agent, representative, attorney, or principal thereof.

22. **"REGULATOR"** shall mean any U.S. federal or state entity charged with supervision or regulation.

23. **"RELEVANT PERIOD"** means December 29, 2007 through the present.

24. **"REPORTS"** shall mean any final reports, research, papers, memoranda, presentations, reviews, statistical compilations, or other analyses.

25. **"REVIEW"** and **"REVIEWING"** shall mean, with respect to APPS, any process of screening, evaluating, analyzing, approving, or monitoring APPS, regardless of whether such process takes place before or after the publication of APPS in an APP MARKETPLACE or before or after the installation of APPS onto a HANDHELD DEVICE or NON-HANDHELD DEVICE.

26. **"STEAM"** shall mean any APP MARKETPLACE operated by YOU available on DEVICES.

27. "**THE**" shall not be construed as limiting the scope of any topic.

28. "**YOU**" or "**YOUR**" shall refer to Valve Corporation or any of its predecessor or successor companies, subsidiaries (INCLUDING Turtle Rock Studios, Campo Santo, Impulsonic, Inc., Star Filled Studios Inc., Campo Santo Productions LLC), corporate affiliates, officers, directors, employees, representatives, consultants, agents, servants, attorneys, accountants, and any other PERSON or entity acting on its behalf, or any PERSON or entity that served in any such role at any time.

## TOPICS FOR TESTIMONY

**TOPIC 1:**

The following information about each of YOUR APP MARKETPLACE(S):

A. Financial information for YOUR APP MARKETPLACE, INCLUDING sales, revenues, and number of downloads as measured on an annual and quarterly basis relating to the sale of APPS, IN-APP PRODUCTS, and EXTERNAL PRODUCTS during the RELEVANT PERIOD;

B. The dates during which the APP MARKETPLACE was available to U.S. consumers during the RELEVANT PERIOD and for each year that the APP MARKETPLACE was available, the number of U.S. consumers who subscribed to or otherwise used it;

C. The method(s) used to monetize YOUR APP MARKETPLACE, INCLUDING, but not limited to, ADVERTISING, commissions, and subscriptions;

D. YOUR decisions relating to the development and/or operation of YOUR APP MARKETPLACE, INCLUDING YOUR decision to build YOUR APP MARKETPLACE, YOUR decision to use a particular revenue model or monetization strategy in each such APP MARKETPLACE, and YOUR decision to develop each such APP MARKETPLACE for specific operating systems;

E. Competition between YOUR APP MARKETPLACE and other APP MARKETPLACES, INCLUDING YOUR assessment of the market share and any analysis

performed of any actual or potential competitors, INCLUDING analysis of any APP MARKETPLACE'S APPS available for download, APP pricing, commissions, product design, product functionality, APP promotion, privacy or security policies, and/or APP REVIEW policies or procedures;

      F.      YOUR decision to charge or change any commission rates on APPS or IN-APP PRODUCTS distributed through YOUR APP MARKETPLACE, and YOUR reasons for charging such commissions;

      G.      YOUR efforts to REVIEW APPS made available through YOUR APP MARKETPLACE, INCLUDING guidelines, policies, and/or procedures for REVIEWING APPS, YOUR process for REVIEWING APPS, the efficacy of any such REVIEW of APPS, consumer and APP DEVELOPER COMMUNICATIONS regarding any such REVIEW, and actual or intended efforts to communicate to users that YOU have REVIEWED such APPS;

      H.      Whether YOU permit the distribution of other APP MARKETPLACES within your APP MARKETPLACE and YOUR reasons for allowing or disallowing such distribution;

      I.      The pricing of APPS on YOUR APP MARKETPLACE and any restraints YOU impose on the prices APP DEVELOPERS may charge for APPS or IN-APP PRODUCTS in other APP MARKETPLACES;

      J.      The presence of zero-price APPS in YOUR APP MARKETPLACE and any efforts or initiatives by YOU to promote the number and/or quantity of the same;

      K.      YOUR policies, practices, and procedures CONCERNING the ability of APP DEVELOPERS to monetize their APPS through means other than sales of APPS and IN-APP PRODUCTS, such as through advertising or sale of EXTERNAL PRODUCTS;

      L.      YOUR policies, practices, and procedures CONCERNING any prohibition or limitation on APP DEVELOPERS' freedom to direct, refer, link out, or "steer" consumers outside of YOUR APP MARKETPLACE;

M.     The extent to which YOUR APP MARKETPLACE allows cross-progression, cross-wallet and/or cross-platform play functionality, including without limitation the use of virtual currencies across platforms; and

N.     The intellectual property YOU hold with respect to YOUR APP MARKETPLACE, INCLUDING the extent YOU license such intellectual property to APP DEVELOPERS and the license terms.

**TOPIC 2:**

The following information about YOUR relationships with APP DEVELOPERS:

A.     Any efforts undertaken by YOU to attract or incentivize APP DEVELOPERS to develop APPS for distribution to YOUR APP MARKETPLACE;

B.     YOUR agreements or contracts with APP DEVELOPERS, INCLUDING any contracts, guidelines, or rules setting forth the terms and conditions under which APP DEVELOPERS may distribute APPS through YOUR APP MARKETPLACE(S), INCLUDING any annual fee(s) or registration fee(s) paid by APP DEVELOPERS in order to develop and publish APPS in YOUR APP MARKETPLACE, any exclusivity agreements or arrangements with any APP DEVELOPERS, any minimum revenue guarantees provided to any APP DEVELOPERS, and any rules or policies CONCERNING the price at which APPS or IN-APP PRODUCTS may be offered for sale in YOUR APP MARKETPLACE;

C.     Any marketing support, services, or assistance YOU provide for APP DEVELOPERS;

D.     Any technical support, services, assistance, or support YOU provide for APP DEVELOPERS, including any intellectual property YOU provide to APP DEVELOPERS, APP development tools, software development kits ("SDKs"), application programming interfaces ("APIs"), APP engines, programming tools, technical support, opportunities for testing APPS before they are released to the consumers, payment processing, refund processing, and security measures;

  E. Any other support, services, or assistance YOU provide for APP DEVELOPERS; and

  F. The services and tools provided to assist developers in making their APPS discoverable to consumers.

**TOPIC NO. 3:**

The following information about YOUR handling and processing of payments:

  A. YOUR policies, practices, and/or procedures for handling and processing payments for the sale of IN-APP PRODUCTS in APPS distributed through YOUR APP MARKETPLACE, INCLUDING whether (and in what circumstances) YOU require APPS distributed through YOUR APP MARKETPLACE to use a payment and purchase functionality provided by YOU to facilitate purchases of IN-APP PRODUCTS, and if so, whether YOU have ever departed from such requirement with respect other APP DEVELOPER'S APPS;

  B. YOUR rationale for any such policies, practices, and procedures for handling and processing payments for the sale of IN-APP PRODUCTS in APPS distributed through YOUR APP MARKETPLACE;

  C. Any costs YOU incurred to process payments for purchases of APPS and IN-APP PRODUCTS in YOUR APP MARKETPLACE(S);

  D. The information that YOU share with APP DEVELOPERS when a user purchases an IN-APP PRODUCT in an APP distributed through YOUR APP MARKETPLACE; and

  E. YOUR policies, practices, and/or procedures concerning the processing and handling of refunds in YOUR APP MARKETPLACE.

**TOPIC NO. 4:**

The following information about each of YOUR APPS:

  A. The availability and usage of the APP on DEFENDANT'S iOS operating system, DEFENDANT'S DEVICES, and DEFENDANT'S APP MARKETPLACE; and

  B. For each of YOUR APPS:

      i.    the means by which YOU have made the APP available to consumers, INCLUDING whether the APP is available on any APP MARKETPLACES, or through direct distribution;

      ii.    why YOU made YOUR decision to distribute or make available the APP through any APP MARKETPLACES or other means of distribution, INCLUDING any alternatives YOU considered;

      iii.    the APPS that you believe or consider to be competitors of each of YOUR APPS;

      iv.    the costs associated with the distribution and development of the APP, including the relative costs and expenses of distributing on each APP MARKETPLACE;

      v.    the monthly active users of the APP on each APP MARKETPLACE the APP is available;

      vi.    the revenue of the APP on each APP MARKETPLACE the APP is available;

      vii.    the commission rate(s) paid on each APP MARKETPLACE the APP is available;

      viii.    the effect that any technological improvements made to DEFENDANT'S iOS operating system or DEFENDANT'S DEVICES have had, if any, on YOUR APPS;

      ix.    the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, features in-app virtual currency, are available as a subscription, or uses any other method(s) or some combination of the above;

      x.    YOUR decision to monetize the APP, INCLUDING why YOU chose the monetization strategy YOU did, whether that strategy changed over time, and whether that strategy differs across APP MARKETPLACES;

    xi.  YOUR ability or desire to handle and process payments for purchases of APPS or IN-APP PRODUCTS on YOUR own and independent from the APP MARKETPLACE on which the APP is being offered;

    xii.  YOUR decision to prohibit or allow "cross-play" (*i.e.*, the extent to which users of an APP can interact with or play against other users of the APP while on different DEVICES) for each APP;

    xiii.  whether IN-APP PRODUCTS or EXTERNAL PRODUCTS purchased on one DEVICE to be applied to the same APP on another DEVICE;

    xiv.  the extent to which game progress achieved on one DEVICE can be applied to the same game on another DEVICE;

    xv.  YOUR understanding as to why users of YOUR APPS use them on multiple platforms or switch among them; and

    xvi.  The importance of search functionality and APP discoverability tools in the distribution of YOUR APPS, including your experience with such functionality and tools on the APP MARKETPLACES in which you distribute YOUR APPS.

**TOPIC NO. 5:**

Security breaches, MALWARE incidents, or privacy concerns relating to YOUR APP MARKETPLACE(S) or YOUR APPS.

**TOPIC NO. 6:**

The manner in which YOU account for YOUR different lines of businesses, INCLUDING how YOU allocate shared costs and expenses.

**TOPIC NO. 7:**

The location of documents and data within your possession, custody, or control relevant to the topics in this Notice, the accessibility of those documents, and YOUR production of documents in response to subpoenas issued in connection with any of the following litigations:

    A.  *In re Apple iPhone Antitrust Litigation.*, Case No. 4:11-cv-06714-YGR (N.D. Cal.);

    B.  *Cameron v. Apple Inc.*, Case No. 419-cv-03074-YGR (N.D. Cal.); and

      C.    *Epic Games, Inc. v. Apple Inc.*, Case No. 4:20-cv-05640-YGR (N.D. Cal.).

**TOPIC NO. 8:**

YOUR organizational structure, including the identification and role of employees with responsibility for and knowledge of the topics in this Notice.

**TOPIC NO. 9:**

COMMUNICATIONS between YOU (and/or YOUR counsel), INCLUDING COMMUNICATIONS CONCERNING any joint or common defense agreement, and:

      A.    Any NAMED CONSUMER PLAINTIFF (and/or their counsel);

      B.    Any NAMED DEVELOPER PLAINTIFF (and/or their counsel);

      C.    The COALITION FOR APP FAIRNESS (and/or their counsel), or any member of the COALITION FOR APP FAIRNESS (and/or their counsel) INCLUDING Basecamp, Blix Inc., Blockchain.com, Deezer, EPIC, Match Group Inc., News Media Europe, Prepear Inc., ProtonMail, SkyDemon, Spotify, Tile and Yoga Buddhi.

**TOPIC NO. 10:**

COMMUNICATIONS between YOU (and/or YOUR counsel) and the United States Department of Justice, the United States Federal Trade Commission, or any other domestic REGULATOR regarding Apple's App Store, any other APP MARKETPLACE, or the distribution of APPS.