# EXHIBIT 5

# UNITED STATES DISTRICT COURT
## IN THE NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| EPIC GAMES, INC., | Case No. 4:20-cv-05640-YGR-TSH |
| Plaintiff, Counter-defendant, | Case No. 4:11-cv-06714-YGR-TSH |
| v. | Case No. 4:19-cv-03074-YGR-TSH |
| APPLE INC., | |
| Defendant, Counterclaimant. | JOINT DISCOVERY LETTER BRIEF REGARDING APPLE'S SUBPOENA TO NON-PARTY VALVE CORPORATION |
| IN RE APPLE IPHONE ANTITRUST LITIGATION, | |
| DONALD R. CAMERON, *et al*., | |
| Plaintiffs, | |
| v. | |
| APPLE INC, | |
| Defendant. | |

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom G, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson,

Apple Inc. ("Apple") and non-party Valve Corporation ("Valve") respectfully submit this joint letter brief regarding Apple's subpoena requesting the production of documents by Valve.

Counsel for Apple and Valve ("the Parties") have met and conferred telephonically and exchanged correspondence in a good faith effort to resolve outstanding disputes. The Parties have been unable to reach an agreement and therefore submit this joint letter pursuant to Judge Hixson's standing order and Local Rule 37.

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

By: /s/ *Michelle Lowery*
     Michelle Lowery
     *Attorneys for Defendant Apple Inc.*

FOX ROTHSCHILD LLP

By: /s/ *Gavin Skok*
     Gavin Skok (*pro hac vice to be submitted*)
     Jaemin Chang
     *Attorneys for Non-Party Valve Corporation*

## I.   **Apple's Position:**

### a.   **Relevant Background**

As the Court's preliminary injunction ruling makes clear, Epic's various mobile and non-mobile distribution options are central to disputed issues of market definition and market power.  *See* Case No. 20-cv-05640-YGR, Dkt. 118 at 18 (observing that Fortnite's "multiplatform nature" suggests other (or all) digital distribution channels "may be economic substitutes").   Valve's digital distribution service, Steam, is the dominant digital game distributor on the PC platform and is a direct competitor to the Epic Game Store.  *See* Nick Statt, *Epic vs. Steam: The Console War Reimagined on the PC*, The Verge (Apr. 16, 2019), https://bit.ly/3oM9uhT.  Epic, like other game developers, could distribute Fortnite on Apple's App Store, the Epic Games Store, Valve's Steam, or through various other digital distribution channels.  As a result, in November, Apple served Valve with a document subpoena seeking documents relating to Steam.  *See* Ex. 1.

Apple and Valve have engaged in several meet and confers, but Valve has refused to produce information responsive to Requests 2 and 32.  Valve admits that the information requested exists in some undisclosed, readily accessible format, but generically claims it won't produce the information because it is confidential or too burdensome to gather *in the manner Apple requested*.  Separately, Valve provided a small production of documents (the "Volume 5 Production") which are so heavily redacted that Apple cannot discern what information they might contain and thus are non-responsive and unusable in their current form.[1]  Apple respectfully requests that the Court order Valve to: (1) produce information responsive to Requests 2 and 32; and (2) provide unredacted copies of the Volume 5 Production.

### b.   **Request 2**

Apple's Request 2 is very narrow.  It simply requests documents *sufficient to show* Valve's: (a) total yearly sales of apps and in-app products; (b) annual advertising revenues from Steam; (c) annual sales of external products attributable to Steam; (d) annual revenues from Steam; and (e) annual earnings (whether gross or net) from Steam.  Apple has gone as far as requesting this information in any readily accessible format, but Valve refuses to produce it.

Request 2 is crucial for calculating the total size of the market for Epic's available digital distribution channels, which this Court already has found highly relevant to this case.  *See* Case No. 4:19-cv-03074-YGR-TSH, Dkt. 125 at 14 (stating that one issue Apple must prove is "the strength of competition for consumers and app developers" among digital distribution platforms).  Valve's Steam undoubtedly is a digital distribution platform that competes to distribute games like Fortnite, and its total yearly sales, advertising, and revenue information, uniquely in Valve's possession, are directly relevant to establishing the strength of competition for consumers and app developers for Steam.

Indeed, recognizing the highly relevant nature of Apple's Request, this Court previously ordered third-party Samsung to produce almost identical information.  *See Id.* at 14 (ordering third-party Samsung to produce information relating to "revenue from apps, in-app products, and in-app

---

[1] Apple can provide *in camera* copies of the Volume 5 Production to the Court upon request.

advertising"). As this Court recognized with respect to Samsung, this information is "relevant to showing the extent of competition" among digital distribution platforms available to distribute Fortnite, including the Apple App Store. *Id.* at 15. Valve recognizes that Apple has argued that the relevant market includes video games available through any channel, but did not, at the preliminary injunction phase, have the evidence to prove that. That is precisely what Apple is trying to prove now and the information requested from Valve is central to that pursuit. *See* Case No. 20-cv-05640-YGR, Dkt. 118 at 17 n.19.

Apple has a substantial need for this information as it is uniquely obtainable from Valve. As the Court previously held, a party establishes substantial need where information is relevant and not reasonably obtainable elsewhere. Apple can only obtain information related to Valve's app revenue, in-app purchases, and advertising from Valve itself. *See* Case No. 4:19-cv-03074-YGR-TSH, Dkt. 125 at 6 ("'[S]ubstantial need' and 'undue hardship' requirements met where documents were relevant and [party] could not reasonably obtain them elsewhere."; *id.* at 21 ("The Court finds these documents are relevant, and since Apple is only able to obtain them from either Samsung or Google, it has shown a substantial need.").

Valve's assertion that multiple databases are needed to extract the information Apple requests is a distraction. Valve has admitted to Apple's counsel that the information requested exists in the normal course of business, but Valve simply refuses to produce it in any of the formats Apple suggested, yet also refuses to provide any information whatsoever as to the form in which the information exists and is readily accessible. Nor is Valve's complaint that the information is competitively sensitive a basis for withholding relevant and readily accessible high-level historic sales and revenue information.[2] Request 2 solely seeks information relating to Valve's historical performance and since "the information sought by this Request does not detail future plans or involve strategic assessments . . . there is no substantial risk of competitive or economic harm" to Valve. *Id.* at 17.

### c. **Request 32**

Request 32 asks for documents *sufficient to show*: (a) the name of each App on Steam; (b) the date range when the App was available on Steam; and (c) the price of the App and any in-app product available on Steam. This is basic information relating to the identity and availability of games over time on Steam, is necessary to determine the scope and breadth of the digital distribution marketplace, and is "relevant to showing competition" between these platforms. Case No. 4:19-cv-03074-YGR-TSH, Dkt. 125 at 17.

Like the information sought in Request 2, the information sought in Request 32 is historical, and does not involve any "future plans or strategic assessments" and thus does not raise risk of any competitive harm. *Id.* at 14. Further, Request 32 seeks information that is uniquely obtainable from Valve. Apple has therefore demonstrated substantial need for Request 32, because the

---

[2] The Court has already held that the Protective Order in *Pepper* and *Cameron*—which is substantively identical to the Protective Order in *Epic*, *see* (Case No. 20-cv-05640-YGR) (Dkt. 112)—is "sufficient" to protect the confidentiality of third-party Samsung's competitively sensitive documents. *See* (Case No. 11-cv-06714-YGR) (Dkt. 242 at 22 n.4). The same result is warranted here.

information is both relevant and not reasonably obtainable elsewhere. *Id.* at 6, 21

### d. **Redactions from the Volume 5 Production**

Valve made its Volume 5 Production with substantial redactions that cover any information that looks to be potentially responsive. When asked to provide unredacted copies, Valve stated that doing so would be burdensome and intrusive, but did not explain why. There is no apparent burden to unredacting these documents; in fact, redacting them in the first place created a greater burden. The redacted information, which undoubtedly is responsive given that Valve produced it, appears to relate to Apple's requests for commissions. Further, producing it cannot be unduly burdensome given that it already has been produced. This information should be unredacted and, if competitive sensitivity is the real issue, then the information is protected by the protective order in this matter.

## II. **Valve's Position:**

Valve is a privately held company with approximately 350 employees that develops PC video games. Valve does not make or sell phones, tablets, or video games for mobile devices, or otherwise compete in the mobile market. Valve also operates Steam, an online platform that lets users purchase and play PC games on their laptops and desktops. Steam users cannot buy or use mobile apps on Steam. Over 30,000+ PC games are available on Steam, over 99% of which were made by third parties other than Valve. Most of these games can also be bought elsewhere, including from developers directly, from brick and mortar retail, or on other PC game platforms. Third party developers that offer their games on Steam control all pricing and content. Valve collects the purchase price from Steam users and remits the proceeds to the third party developer net of a revenue share to Valve. Fortnite is not available on Steam, and Epic has publicly and unequivocally stated it will not offer Fortnite on Steam unless Valve changes its business model.

In response to Apple's 46 documents requests, Valve already produced documents regarding its revenue share, competition with Epic, Steam distribution contracts, and other documents. Apple was not satisfied and demands—without offering to cover Valve's costs, which would be significant—that Valve (i) recreate six years' worth of PC game and item sales for hundreds of third party video games, then (ii) produce a massive amount of confidential information about these games and Valve's revenues. Valve objected. *See* Ex. 2.

Apple wrongly claims those requests are narrow. They are not. Apple gave Valve a list of 436 video games it says are available on the Epic Game Store and Steam, and (a) demanded Valve identify, from 2015 to the present, every version and all digital content or items for each of these games on Steam, then (b) provide exhaustive information about all of them, including:
- The dates on sale, plus every price and price change, from 2015 to the present (RFP 32);
- Gross revenues for each game version and item, broken down individually (RFP 2); and
- All of Valve's revenues related to these versions, content and items (RFP 2).

### A. Apple's Overbroad Demands Impose Too Heavy A Burden On A Non-Party

Apple's demands would impose an extraordinary burden on Valve to query, process and combine a massive amount of to create the documents Apple seeks—*materials that Valve does*

*not create or keep in the ordinary course of business*—and with little or no value, as Valve does not compete in the mobile app market at issue. Specifically, Apple's demands require:

- Identifying all versions and items on Steam since 2015 for all 436 games on Apple's list would require Valve to review and query years of sales listing data. Apple could use public information on Steam to complete this task itself, but wants Valve to do it;
- Determining the sales prices for each game version and item at specific times would require Valve to query at least two separate databases—one that stores base prices and another that keeps discount information—then merge that data;
- Valve would need to pull unit sales information from a third database and payment rules from yet another database, then collate that information as well;
- For any game or item sold as part of a package (as many are), Valve would need to query yet another source for the allocation rules used to allocate that specific package price among its components, then apply those rules to other queried data;
- Return information must also be queried and the compiled data adjusted for returns; then
- Valve would need to query and separate out revenue share information to determine its revenues related to each sale.

That is an overwhelming amount of work—and it is for only a single version or item. Apple's demands would require Valve to repeat this process thousands of times. The fact that underlying data exists somewhere spread across multiple databases, which each could conceivably be queried to identify one data point, then all data points from each database processed, compiled, error tested and aggregated to create from scratch a data report that is never created or kept in the ordinary course of business does not mean the information sought is "reasonably accessible," as Apple wrongly asserts. Similarly, that Apple narrowed its requests from all 30,000+ games on Steam over ten years, to 436 games over six years does not eliminate the burden or make the requests reasonable—it simply makes an impossible task slightly less impossible.

Apple argues it is fair to make Valve do all this work and incur this disruption because Samsung—a public company that competes in the mobile app market—produced something similar. Public companies like Samsung must keep detailed financial and operational information. Valve is a privately held company with no outside shareholders or lenders, and not subject to public regulatory reporting and auditing requirements. Valve does not in the ordinary course of business keep the information Apple seeks for a simple reason: Valve doesn't need it.

> B.    Apple Has Not Shown Substantial Need For The Information It Demands.

Apple's RFPs 2 and 32 seek proprietary and highly confidential information, so Apple must establish substantial need for the information that cannot be otherwise met without undue hardship. Fed. R. Civ. P. 45(d)(3). Apple has not made that showing.

First, Apple argues the information it demands is necessary to calculate market size and definition. False. Apple, Google and Samsung compete with each other in the mobile app market. Valve does not compete in that market. The Court already recognized the relevant market must include the product at issue. (Case No. 20-cv-05640-YGR) (Dkt. 118 at 12) (citation omitted). Apple argues the relevant market could be so broad as to include any video game available through any channel, but gives no evidence this might actually be true. Indeed,

the Court noted there is "little evidence" iOS users owned multiple devices and changed from one to another in response to price changes. *Id.* at 17 n.19.

Second, Apple's latest market definition argument is contradicted by its prior ones. When opposing a preliminary injunction, Apple argued the relevant market included "competing platforms on which Fortnite is distributed and monetized." (Case No. 20-cv-05640-YGR) (Dkt. 118 at 16). Later, in seeking to compel Samsung, this Court noted that "Apple firmly takes the view that in the *Epic* case, the relevant market is Epic alone." *Id.* (Dkt. 296 at 4). Valve is not in either of these markets—Valve is not Epic, and Fortnite is not available on Steam.

Third, Apple argues Valve's sales information might help define the relevant market, yet Apple seeks information only about a subset of games sold on both Steam and the Epic Games Store. This does not show market size or definition—it just shows which of two market participants sell more copies of particular PC games. This Court rejected Apple's similar attempt to compel Epic sales information from Samsung, holding that documents focused on Epic are "unlikely to be important evidence of competition in a market or the effect of Apple's policies on any sort of market" and that "if the market is any bigger than this one company, the relevant discovery would have to be about the general availability of other ways to distribute apps . . . and in general what kinds of commission structures or policies apply." *Id.* (Dkt. 296 at 4-5). Valve already produced information to Apple about Valve's revenue share, and other ways to distribute mobile apps and games are readily knowable to Apple and its economists without discovery from Valve.

Apple claims the information it demands is uniquely obtainable from Valve, yet much of what Apple seeks is sales and pricing information for third party games. That information belongs to the third party developers of those games, not Valve. But instead of seeking it from those developers—and being required to establish substantial need to obtain their information—Apple takes a shortcut by subpoenaing Valve. *See U.S. v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 160 (D. Del. 1999) (noting "[t]he risk of injury to the owner of confidential information is presumably greater where the owner was never in a position to accept or reject the risk of disclosure of confidential information"). Valve properly declined to provide third parties' confidential information (sales and pricing data) to Apple and redacted it from its Volume 5 production.

That Valve's own highly confidential sales and revenue information is available only from Valve is not a substitute for showing relevant and a substantial need. Valve has chosen to stay private in part to avoid the burden of the public company disclosure and reporting requirements that companies like Samsung or Google are subject to. Valve does not disclose its sales and revenue information and projections, and Valve derives a significant value and edge from the confidentiality of such information, including by keeping it out of the hands of companies like Epic who also sell PC games. Accordingly, Valve redacted such information from its Volume 5 production and declined to produce it in response to Apple's demands.

Somehow, in a dispute over mobile apps, a maker of PC games that does not compete in the mobile market or sell "apps" is being portrayed as a key figure. It's not. The extensive and highly confidential information Apple demands about a subset of the PC games available on Steam does not show the size or parameters of the relevant market and would be massively burdensome to pull together. Apple's demands for further production should be rejected.

McDERMOTT WILL & EMERY LLP

DATED:          February 18, 2021


By:      /s/ Michelle Lowery
          Michelle Lowery
          *Attorneys for Defendant Apple Inc.*


McDERMOTT WILL & EMERY LLP
MICHELLE LOWERY
mslowery@mwe.com
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: +1 310 277 4110
Facsimile:  +1 310 277 4730

PETER JOHN SACRIPANTI
psacripanti@mwe.com
JOHN J. CALANDRA
jcalandra@mwe.com
NICOLE L. CASTLE
ncastle@mwe.com
340 Madison Avenue
New York, NY 10173-1922
Telephone: +1 212 547 5400
Facsimile:  +1 212 547 5444

FOX ROTHSCHILD LLP

DATED:          February 18, 2021


By:      /s/ Gavin Skok
          Gavin Skok (*pro hac vice to be submitted*)
          Jaemin Chang
          *Attorneys for Non-Party Valve Corporation*


FOX ROTHSCHILD LLP
GAVIN W. SKOK
gskok@foxrothschild.com
1001 Fourth Ave., Suite 4500
Seattle, WA 98154-1065
Telephone: +1 206 624 3600
Facsimile:  +1 206 389 1708

JAEMIN CHANG
jchang@foxrothschild.com
345 California St., Suite 2200
San Francisco, CA 94104-2670
Telephone: +1 415 364 5540
Facsimile:  +1 415 391 4436

**E-FILING ATTESTATION**

I, Michelle Lowery, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.


By:  /s/ *Michelle Lowery*

Michelle Lowery

EXHIBIT 1

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the
Northern District of California

EPIC GAMES, INC. v. APPLE INC.                    )        Civil Action Nos.  4:20-CV-05640-YGR
CAMERON ET AL v. APPLE INC.                       )                           4:19-CV-03074-YGR
IN RE APPLE IPHONE ANTITRUST LITIGATION           )                           4:11-CV-06714-YGR
                                                  )
                                                  )
                                                  )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                              Valve Corporation
                 (c/o Corpserve, Inc. 1001 4th Ave, Suite 4500, Seattle, WA 98154)

*(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

        See Schedule A

| Place: McDermott Will & Emery LLP<br>2049 Century Park East<br>Suite 3200<br>Los Angeles, CA 90067-3206<br><br>Or as otherwise agreed. | Date and Time:<br>December 23, 2020, 5:00 PM PT |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: December 9, 2020

                    *CLERK OF COURT*
                                                        OR
                                                             */s/ Michelle Lowery*
_____                    _____
    *Signature of Clerk or Deputy Clerk*                      *Attorney's signature*
                                                            Michelle Lowery

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*      Apple Inc.
_____, who issues or requests this subpoena, are:

Michelle Lowery, 2049 Century Park East, Suite 3200, Los Angeles, CA 90067-3206, mslowery@mwe.com, (310) 551-9309

American LegalNet, Inc.<br>www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).


American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action Nos. 4:11-CV-06714-YGR, 4:19-CV-03074-YGR, 4:20-CV-05640-YGR

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ on *(date)* _____

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____

My fees are $ _____   My fees are $ _____   My fees are $   _____

I declare under penalty of perjury that this information is true.

Date: _____          Date: _____

                                                   *Server's signature*

                                   _____

                                                   *Printed name and title*

                                   _____

                                                   *Server's address*

Additional information regarding attempted service, etc.:


American LegalNet, Inc.
www.FormsWorkFlow.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).



American LegalNet, Inc.
www.FormsWorkFlow.com

# SCHEDULE A

Notwithstanding any definition set forth below, each word, term, or phrase used in this Subpoena is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California.

## DEFINITIONS

1. The following rules of construction shall apply to all discovery requests:

    a. the connectives "**and**" and "**or**" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

    b. the use of the present or past tense shall be construed to include both the present and past tenses as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope;

    c. "**any**" and "**each**" shall be construed to include and encompass "**all**"; and

    d. the use of the singular form of any word includes the plural and vice versa.

2. "**ADVERTISING**" shall mean the in-APP presentation of third-party promotional content in exchange for payment.

3. "**ANDROID**" shall mean Google's mobile operating system.

4. "**APP**" shall mean a software application for a HANDHELD DEVICE or NON-HANDHELD DEVICE. For the avoidance of doubt, the phrase "**EPIC APP**" shall mean any APP developed and/or published by EPIC, INCLUDING *Fortnite*, *Battlebreakers*, and *Spyjinx*, as well as any APP developed and/or published by EPIC (such as the Epic Games App) that facilitates the download of those or other APPS.

5. "**APP DEVELOPER**" shall mean any PERSON who developed one or more APPS.

6. "**APP MARKETPLACE**" shall mean any online storefront where APPS are offered for download and/or purchase. This term shall include, without limitation, Google Play, the Samsung Galaxy Store, Android Market, DEFENDANT'S iOS and Mac App Stores, the

Amazon Appstore, Amazon Underground, the Microsoft Store for Xbox, Windows Store, and Windows Phone Store, the Epic Games Store, Steam, Origin, and online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo.  For the avoidance of doubt, the phrase "**YOUR APP MARKETPLACE**" shall refer to STEAM.

7. "**COMMUNICATION**" shall include, without limitation, any transmission or transfer of information of any kind, whether orally, electronically, in writing, or in any other manner, at any time or place, and under any circumstances whatsoever.

8. "**CONCERNING**" a given subject shall mean: directly or indirectly comprising, concerning, constituting, containing, discussing, embodying, evidencing, exhibiting, identifying, mentioning, negating, pertaining to, recording, regarding, reflecting, relating to, showing, or supporting a given subject matter.

9. "**DEFENDANT**" shall mean Apple Inc.

10. "**DEVICE**" shall mean any **HANDHELD DEVICE** or **NON-HANDHELD DEVICE.**

11. "**DOCUMENT**" and "**DOCUMENTS**" shall have the full meaning ascribed to those terms under Rule 34 of the Federal Rules of Civil Procedure and shall include, without limitation, any and all drafts; COMMUNICATIONS; memoranda; records; REPORTS; books; records, REPORTS, and/or summaries of personal conversations or interviews; diaries; presentations; slide decks; graphs; charts; spreadsheets; diagrams; tables; photographs; recordings; tapes; microfilms; minutes; records, REPORTS, and/or summaries of meetings or conferences; press releases; blog posts; stenographic handwritten or any other notes; work papers; checks, front and back; check vouchers, check stubs, or receipts; tape data sheets or data processing cards or discs or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced; and any paper or writing of whatever description, INCLUDING information contained in any computer although not yet printed out. Any production of electronically stored information shall include the information needed to understand such

2

information. The term "DOCUMENT" or "DOCUMENTS" further includes all copies where the copy is not identical to the original.

12.    "**EPIC**" shall mean Epic Games, Inc., its officers, directors, employees, representatives, consultants, agents, servants, attorneys, accountants, or any other person or entity acting on its behalf, or any PERSON or entity that served in any such role at any time, as well as its predecessors, successors, subsidiaries, departments, divisions, joint ventures, and/or affiliates, (including but not limited to Epic Games International S.à r.l and Life on Air, Inc.), and any PERSON that Epic Games, Inc., manages or controls.

13.    "**EXTERNAL PRODUCTS**" shall mean digital products and services purchased outside of an APP (such as through an APP DEVELOPER's website) that one may use within an APP.

14.    "**GAME KEY**" shall mean any product code that can be redeemed for an APP through STEAM.

15.    "**HANDHELD DEVICE**" shall mean any smartphone, tablet, or portable MP3 music player.

16.    "**INCLUDING**" shall not be construed as limiting any request, and shall mean the same as "including, but not limited to."

17.    "**IN-APP PRODUCT**" shall mean any feature, service, or functionality that can be enabled or unlocked within an APP in exchange for a fee, INCLUDING subscriptions, in-game currencies, game levels, access to premium content, or unlocking a full version of an APP.

18.    "**MALWARE**"  shall mean APPS and other software that could put users, user data, or devices at risk, INCLUDING computer viruses, worms, trojans, ransomware, scareware, spyware, phishing apps, backdoors, hostile downloaders, mobile billing fraud apps (including SMS fraud, call fraud, and toll fraud), and click fraud apps.

19.    "**NAMED CONSUMER PLAINTIFF**" shall mean a named plaintiff in *Pepper v. Apple Inc.*, Case No. 4:11-cv-06714-YGR (N.D. Cal.), and *Lawrence v. Apple Inc.*, Case No. 4:19-cv-02852-YGR (N.D. Cal.), INCLUDING:

3

a. **Edward W. Hayter**, of Brooklyn, NY;

b. **Edward Lawrence**, of California;

c. **Robert Pepper**, of Chicago, IL; and

d. **Stephen H. Schwartz**, of Ardsley, NY.

20.    **"NAMED DEVELOPER PLAINTIFF"** shall mean a named plaintiff in *Cameron v. Apple Inc.*, Case No. 419-cv-03074-YGR (N.D. Cal.), and *Sermons v. Apple Inc.*, Case No. 4:19-cv-03796-YGR (N.D. Cal.), INCLUDING:

a. **Donald R. Cameron**, of California;

b. **Barry Sermons**, of Georgia; and

c. **Pure Sweat Basketball, Inc.,** an Illinois corporation.

21.    **"NON-HANDHELD DEVICE"** shall mean laptop computers, desktop computers, or video game consoles.

22.    **"PERSON"** shall include, without limitation, natural persons, corporations, partnerships, business trusts, associations, and business or other entities, and any officer, director, employee, partner, corporate parent, subsidiary, affiliate, agent, representative, attorney, or principal thereof.

23.    **"REPORTS"** shall mean any final reports, research, papers, memoranda, presentations, reviews, statistical compilations, or other analyses.

24.    **"REVIEW"** and **"REVIEWING"** shall mean, with respect to APPS, any process of screening, evaluating, analyzing, approving, or monitoring APPS, regardless of whether such process takes place before or after the publication of APPS in an APP MARKETPLACE or before or after the installation of APPS onto a HANDHELD DEVICE or NON-HANDHELD DEVICE.

25.    **"STEAM" s**hall mean any APP MARKETPLACE operated by YOU available on DEVICES.

26.    **"STEAM LINK"** shall mean YOUR APP for any DEVICE.

27.    **"STEAMOS"** shall mean any operating system offered by YOU for any DEVICE.

28.    **"THE"** shall not be construed as limiting the scope of any topic.

4

29.     "**YOU**" or "**YOUR**" shall refer to Valve Corporation or any of its predecessor or successor companies,     subsidiaries (INCLUDING Turtle Rock Studios, Campo Santo, Impulsonic, Inc., Star Filled Studios Inc., Campo Santo Productions LLC), corporate affiliates, officers, directors, employees, representatives, consultants, agents, servants, attorneys, accountants, and any other PERSON or entity acting on its behalf, or any PERSON or entity that served in any such role at any time.

## INSTRUCTIONS

1.     All DOCUMENTS requested herein must be produced in their entirety, with all attachments and enclosures, regardless of whether YOU consider the attachments and enclosures to be relevant or responsive to the Request.

2.     In responding to these Requests, YOU shall produce all DOCUMENTS and information in YOUR possession, custody, or control, and all DOCUMENTS reasonably available to YOU, INCLUDING those in the possession, custody, or control of YOUR present and former attorneys, investigators, accountants, agents, representatives, or other PERSONS acting on YOUR behalf.

3.     These Requests shall not be deemed to call for identical copies of DOCUMENTS. "Identical" means precisely the same in all respects; for example, a DOCUMENT with handwritten notes or editing marks shall not be deemed identical to one without such notes or marks.

4.     In the event YOU are able to produce only some of the DOCUMENTS called for in a particular Request, YOU shall produce all the DOCUMENTS available and state the reason(s) for YOUR inability to produce the remainder.

5.     If there are no DOCUMENTS responsive to a category in these Requests, YOU shall so state in writing. If a DOCUMENT requested is no longer existing or available, YOU shall so state in writing.

6.     If YOU object to a portion of any Request, YOU shall produce all DOCUMENTS called for by that portion of the Request to which YOU do not object.

5

7. In producing DOCUMENTS responsive to these requests, YOU must Bates stamp them in a manner that clearly identifies the party that is producing each such DOCUMENT, and in whose possession the DOCUMENT was found.

8. If any requested DOCUMENT is withheld on the basis of any claim of privilege, YOU must set forth the information necessary for DEFENDANT to ascertain whether the privilege properly applies, INCLUDING describing the DOCUMENT withheld, stating the privilege being relied upon, identifying all PERSONS (by name) who have had access to such DOCUMENT (INCLUDING all the identity(ies) of the author(s) or maker(s), recipient(s), carbon copy recipient(s), blind carbon copy recipient(s)), the number of attachments (if any), the Bates or production number of any attachments not withheld on the basis of privilege, the applicable date(s), and the subject matter(s) in a privilege log.

9. If any portion of any DOCUMENT responsive to these Requests is withheld under claim of privilege, all non-privileged portions must be produced with the portion(s) claimed to be privileged redacted and logged in a privilege log pursuant to the preceding instructions.

10. If YOU cannot answer all parts of a Request, but can answer some parts, YOU must answer those parts to which YOU can reply, and specify "unknown," or some other response, as appropriate, for any part to which YOU cannot reply.

11. Unless otherwise stated, the time period for which the Requests seek DOCUMENTS is 2008 to the present.

12. References to any natural PERSON shall include, in addition to the natural PERSON, any agent, employee, representative, attorney, superior, or principal thereof.

13. Specified date ranges are inclusive. Unless otherwise stated, a year includes all days of that year from January 1 to December 31.

14. These Requests are to be regarded as continuing pursuant to Rule 26(e) of the Federal Rules of Civil Procedure. YOU are required to provide, by way of supplementary responses hereto, such additional information as may be obtained by YOU or any PERSON acting on YOUR behalf that will augment or modify YOUR answers initially given to the following

Requests. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, YOU are required to supplement these responses and provide additional DOCUMENTS without a specific request from DEFENDANT.

15.    DEFENDANT serves these Requests without prejudice to its right to serve additional requests for production of DOCUMENTS.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**

REPORTS comparing the distribution of APPS through any APP MARKETPLACE, INCLUDING Google Play, the Samsung Galaxy Store, Android Market, DEFENDANT'S iOS and Mac App Stores, the Amazon Appstore, Amazon Underground, the Microsoft Store for Xbox, Windows Store, and Windows Phone Store, the Epic Games Store, Origin, and online storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo, and YOUR APP MARKETPLACE(S), INCLUDING:

a.    the past or present benefits or costs of distribution in each APP MARKETPLACE;

b.    past or present fees and commission rates charged by each APP MARKETPLACE, INCLUDING how such fees and commission rates affect the attractiveness of any APP MARKETPLACE to APP DEVELOPERS;

c.    past or present security or privacy protections offered in each APP MARKETPLACE;

d.    past or present APP REVIEW and approval procedures and practices in each APP MARKETPLACE;

e.    past or present tools for APP DEVELOPERS in each APP MARKETPLACE;

f.    past or present relative ease or difficulty of updating APPS in each APP MARKETPLACE;

g.    past or present market share calculations or estimates for APP MARKETPLACES, INCLUDING the definitions used to perform those calculations;

7

h.    past or present decision to distribute YOUR APPS on a particular APP MARKETPLACE;

i.    contemplated, planned, or actual distribution of YOUR APPS directly (*i.e.*, not through an APP MARKETPLACE); and

j.    past or present APP maintenance activities in each APP MARKETPLACE.

**REQUEST FOR PRODUCTION NO. 2:**

DOCUMENTS sufficient to show with respect to YOUR APP MARKETPLACE(S):

a.    the total yearly amount remitted to YOU from sales of APPS and IN-APP PRODUCTS (by APP and method of monetization, if available);

b.    any estimates of or accounting for annual ADVERTISING revenue attributable to YOUR APP MARKETPLACE (by APP, if available);

c.    any estimates of or accounting for YOUR annual revenues from sales of EXTERNAL PRODUCTS attributable to YOUR APP MARKETPLACE (by APP and method of monetization, if available);

d.    any estimates of or accounting for annual revenues (other than the foregoing) attributable to YOUR APP MARKETPLACE (by APP and method of monetization, if available); and

e.    any estimates of or accounting for annual earnings, income, or profit (whether gross or net) attributable to YOUR APP MARKETPLACE (by APP and method of monetization, if available).

**REQUEST FOR PRODUCTION NO. 3:**

REPORTS CONCERNING YOUR contemplated, planned, or actual development and/or operation of YOUR APP MARKETPLACE(S), INCLUDING:

a.    YOUR decision to build each such APP MARKETPLACE;

b.    YOUR decision to use a particular revenue model in each such APP MARKETPLACE; and

8

c.       YOUR decision to develop each such APP MARKETPLACE for specific operating systems.

**REQUEST FOR PRODUCTION NO. 4:**

REPORTS CONCERNING comparisons of the number, identity, genre, quality, and/or popularity of APPS available for download from YOUR APP MARKETPLACE(S) and APPS available for download from other APP MARKETPLACE(S) or available on different DEVICES.

**REQUEST FOR PRODUCTION NO. 5:**

REPORTS sufficient to show the percentage of APPS purchased directly from YOUR APP MARKETPLACE(S) versus the percentage of APPS purchased from third parties, INCLUDING from GAME KEYS.

**REQUEST FOR PRODUCTION NO. 6:**

DOCUMENTS CONCERNING STEAMOS INCLUDING the development of STEAMOS, COMMUNICATIONS about and with DEVICE manufacturers CONCERNING STEAMOS, and REPORTS sufficient to show STEAMOS utilization.

**REQUEST FOR PRODUCTION NO. 7:**

DOCUMENTS and COMMUNICATIONS CONCERNING the availability and usage of YOUR APP MARKETPLACE(S), INCLUDING STEAM, and YOUR APP(S), INCLUDING STEAM LINK, on DEFENDANT'S iOS operating system, DEFENDANT'S DEVICES, and DEFENDANT'S APP MARKETPLACE, INCLUDING DOCUMENTS and COMMUNICATIONS CONCERNING the publication of STEAM LINK on DEFENDANT'S APP MARKETPLACE as summarized in a June 4, 2018 article, available at https://www.reuters.com/article/us-apple-steam/apple-issues-new-app-store-rules-aimed-at-streaming-pc-based-games-idUSKCN1J034K.

**REQUEST FOR PRODUCTION NO. 8:**

DOCUMENTS and COMMUNICATIONS CONCERNING the development, distribution, and utilization of YOUR APP(S), INCLUDING STEAM LINK, and REPORTS sufficient to show any tendency for consumers to download YOUR APP(S) on any DEVICES.

**REQUEST FOR PRODUCTION NO. 9:**

COMMUNICATIONS CONCERNING whether consumers are willing to purchase a DEVICE with a different operating system or from a different DEVICE manufacturer than they already own and any switching costs they many consider, INCLUDING the value of any APPS previously purchased that the consumer cannot operate on the new DEVICE.

**REQUEST FOR PRODUCTION NO. 10:**

DOCUMENTS sufficient to show any efforts undertaken by YOU to attract or incentivize APP DEVELOPERS to develop APPS for distribution to YOUR APP MARKETPLACE.

**REQUEST FOR PRODUCTION NO. 11:**

DOCUMENTS created by YOU CONCERNING competition between or among APP MARKETPLACES, INCLUDING any DOCUMENTS describing competition regarding STEAM, YOUR strategy related to actual or potential competitors to STEAM, and YOUR assessment of the market share for STEAM, INCLUDING any analysis performed of any actual or potential competitor to STEAM, such as analysis of any actual or potential competitor's market share, APP pricing, commissions, product design, product functionality, APP promotion, privacy or security policies, and/or APP REVIEW policies or procedures.

**REQUEST FOR PRODUCTION NO. 12:**

DOCUMENTS and COMMUNICATIONS CONCERNING any security breaches or privacy concerns relating to YOUR APP MARKETPLACE(S), INCLUDING those reported in an November 11, 2011 *BBC News* article, available at https://www.bbc.com/news/technology-15690187, an May 31, 2018 *Vice* article available at, https://www.vice.com/en/article/9k8qv5/steam-exploit-left-users-vulnerable-for-10-years, and an August 9, 2019 *Forbes* article, available at https://www.forbes.com/sites/daveywinder/2019/08/09/critical-steam-security-warning-issued-for-72-million-windows-10-gamers/?sh=56130b6e35e1.

10

**REQUEST FOR PRODUCTION NO. 13:**

DOCUMENTS sufficient to show YOUR agreements or contracts with APP DEVELOPERS, INCLUDING any agreements or contracts with EPIC, effective during the period that YOU have operated any APP MARKETPLACE, INCLUDING any contracts, guidelines, or rules setting forth the terms and conditions under which APP DEVELOPERS may distribute APPS through YOUR APP MARKETPLACE(S).

**REQUEST FOR PRODUCTION NO. 14:**

DOCUMENTS sufficient to show any annual fee(s) or registration fee(s) paid by APP DEVELOPERS in order to develop and publish APPS in YOUR APP MARKETPLACE(S).

**REQUEST FOR PRODUCTION NO. 15:**

DOCUMENTS sufficient to show any commissions and/or transaction fees charged by YOU when a user makes a purchase from YOUR APP MARKETPLACE(S) or from an APP downloaded from the same, INCLUDING:

a.      any commissions and/or transaction fees charged on the sale of APPS or IN-APP PRODUCTS and any exemptions from or limitations on such commissions or fees; and

b.      the impact on any commission rates and/or transaction fees charged by YOU when a user makes a purchase through the use of any discount, virtual currency, or particular payment method, INCLUDING any particular credit card.

**REQUEST FOR PRODUCTION NO. 16:**

REPORTS CONCERNING YOUR decision to change any commission rates on APPS or IN-APP PRODUCTS distributed through YOUR APP MARKETPLACE(S).

**REQUEST FOR PRODUCTION NO. 17:**

DOCUMENTS sufficient to show any rules or policies CONCERNING the price at which APPS or IN-APP PRODUCTS may be offered for sale in YOUR APP MARKETPLACE(S), INCLUDING:

a.      any requirements that prices end in a specific number (*e.g.*, ".99");

b.      any variations in pricing based on the use of payment methods by consumers (*e.g.*, discounts); and

c.      any requirements that prices for APPS in YOUR APP MARKETPLACE(S) be linked to prices charged for the same APPS in other APP MARKETPLACES other than YOURS (*e.g.*, "most favored nation" requirements).

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS and REPORTS CONCERNING YOUR decision that "Starting from October 1, 2018 (i.e. revenues prior to that date are not included), when a game makes over $10 million on Steam, the revenue share for that application will adjust to 75 percent/25 percent on earnings beyond $10M. At $50 million, the revenue share will adjust to 80 percent/20 percent on earnings beyond $50M," as described in a December 18, 2018 blog post, available at, https://www.vice.com/en/article/vbaxkb/fortnite-is-so-popular-it-could-end-steams-decade-long-dominance.

**REQUEST FOR PRODUCTION NO. 19:**

DOCUMENTS CONCERNING the amount and value of services provided by STEAM to APP consumers, INCLUDING APP REVIEW, store curation and social networking.

**REQUEST FOR PRODUCTION NO. 20:**

DOCUMENTS sufficient to show any marketing, services, assistance, or support YOU provide for APP DEVELOPERS, INCLUDING APP development tools, application programming interfaces ("APIs"), programming tools, technical support, opportunities for testing APPS before they are released to the consumers, marketing, payment processing, refund processing, and security measures.

**REQUEST FOR PRODUCTION NO. 21:**

DOCUMENTS sufficient to show, for each year since 2010, any costs YOU incurred to process payments for purchases of APPS and IN-APP PRODUCTS in YOUR APP MARKETPLACE(S).

**REQUEST FOR PRODUCTION NO. 22:**

DOCUMENTS sufficient to show YOUR policies, practices, and/or procedures for handling and processing payments for the sale of IN-APP PRODUCTS in APPS distributed through YOUR APP MARKETPLACE, INCLUDING DOCUMENTS sufficient to show whether YOU require APPS distributed through YOUR APP MARKETPLACE to use a payment and purchase functionality provided by YOU to facilitate purchases of IN-APP PRODUCTS, and if so, whether YOU have ever departed from such requirement with respect to EPIC APPS or any other APP DEVELOPER'S APPS.

**REQUEST FOR PRODUCTION NO. 23:**

DOCUMENTS, INCLUDING COMMUNICATIONS with EPIC, CONCERNING EPIC's submission of *Fortnite* for distribution through YOUR APP MARKETPLACE.

**REQUEST FOR PRODUCTION NO. 24:**

DOCUMENTS sufficient to show, for STEAM and any other services that offer access to APPS that YOU offer to U.S. users on any DEVICE:

a.     the dates during which the service was available to U.S. consumers;

b.     for each year that the service was available, the number U.S. consumers who subscribed to or otherwise used it;

c.     the method(s) used to monetize the service, INCLUDING, but not limited to, ADVERTISING and subscriptions;

d.     YOUR decision to monetize the service, INCLUDING why YOU chose the monetization strategy YOU did, and whether that strategy changed over time; and

e.     YOUR annual revenues from the service (by type of monetization, if available).

**REQUEST FOR PRODUCTION NO. 25:**

DOCUMENTS sufficient to describe YOUR efforts to REVIEW APPS made available through YOUR APP MARKETPLACE(S) or any other source, INCLUDING:

a.     guidelines, policies, and/or procedures for REVIEWING APPS;

b.      separately by year and operating system, any costs YOU incurred or resources YOU expended in REVIEWING APPS;

c.      the efficacy of any such REVIEW of APPS, INCLUDING the number of instances of MALWARE YOU detected, the number of instances of MALWARE YOUR REVIEW failed to detect, and consumer and APP DEVELOPER COMMUNICATIONS regarding any such REVIEW; and

d.      actual or intended efforts to communicate to users that YOU have REVIEWED such APPS.

**REQUEST FOR PRODUCTION NO. 26:**

DOCUMENTS describing the organizational structure of, and/or listing personnel working within, any division or unit of YOUR business that is responsible for APP distribution and/or YOUR APP MARKETPLACE(S) (INCLUDING APP REVIEW), INCLUDING any organizational charts or employee directories pertaining to such business unit(s) or division(s).

**REQUEST FOR PRODUCTION NO. 27:**

DOCUMENTS sufficient to show the following per-user averages for consumers associated with YOUR APP MARKETPLACE separately for each year since 2010:

a.      annual spending on APPS and IN-APP PRODUCTS;

b.      annual amounts received by YOU due to ADVERTISING shown to the user;

c.      the portion of annual spending that is attributable to credits, discounts, or virtual currencies, INCLUDING gift cards, promotional codes, or the use of any particular credit card.

**REQUEST FOR PRODUCTION NO. 28:**

REPORTS CONCERNING the existence of MALWARE, INCLUDING any efforts to measure or quantify the number of APPS that contained MALWARE, the number of downloads of APPS that contained MALWARE and the impact of such MALWARE in:

a.      APPS offered by YOUR APP MARKETPLACE(S); and

b.      APPS offered by APP MARKETPLACES other than YOUR APP MARKETPLACE(S).

**REQUEST FOR PRODUCTION NO. 29:**

DOCUMENTS sufficient to show, for each NAMED CONSUMER PLAINTIFF:

a.      the number of APPS downloaded by the NAMED CONSUMER PLAINTIFF from YOUR APP MARKETPLACE(S);

b.      for each APP downloaded by the NAMED CONSUMER PLAINTIFF from YOUR APP MARKETPLACE(S):

      i.      the identity of the APP;

      ii.      the date of download;

      iii.      the price paid for the download;

      iv.      the date that any IN-APP PRODUCT associated with the APP was purchased and the price paid for the IN-APP PRODUCT;

      v.      whether the APP uses a third party services for ADVERTISING; and

      vi.      to the extent the APP is available for use on a time-of-use basis, the number of minutes of usage of such APP.

**REQUEST FOR PRODUCTION NO. 30:**

DOCUMENTS sufficient to show, for each NAMED DEVELOPER PLAINTIFF:

a.      whether the NAMED DEVELOPER PLAINTIFF has published APPS on YOUR APP MARKETPLACE(S);

b.      any identification or account number associated with the NAMED DEVELOPER PLAINTIFF; and

c.      for each APP published by the NAMED DEVELOPER PLAINTIFF on YOUR APP MARKETPLACE(S):

      i.      the name of the APP;

      ii.      the date range during which the APP was available for download on YOUR APP MARKETPLACE(S);

      iii.      the number of times the APP has been downloaded from YOUR APP MARKETPLACE(S) each year;

    iv.    the price of the APP and any IN-APP PRODUCT associated with the APP on YOUR APP MARKETPLACE(S), INCLUDING any changes to such pricing over time;

    v.    the total amount of money remitted by YOU to the NAMED DEVELOPER PLAINTIFF for purchases of such APP or associated IN-APP PRODUCT(S);

    vi.    whether the APP uses any third party service for ADVERTISING; and

    vii.    to the extent the APP is available for use on a time-of-use basis, the number of minutes of usage of such APP.

## REQUEST FOR PRODUCTION NO. 31:

DOCUMENTS (INCLUDING data) sufficient to show, for each month since 2010:

a.    whether EPIC has published APPS on YOUR APP MARKETPLACE(S);

b.    any identification or account number associated with EPIC;

c.    for each APP published by EPIC on YOUR APP MARKETPLACE(S):

    i.    the name of the APP;

    ii.    the date range during which the APP was available for download on YOUR APP MARKETPLACE(S);

    iii.    the number of times the APP has been downloaded from YOUR APP MARKETPLACE(S) each year;

    iv.    the price of the APP and any IN-APP PRODUCT associated with the APP on YOUR APP MARKETPLACE(S), INCLUDING any changes to such pricing over time;

    v.    the total value in U.S. dollars of IN-APP PRODUCTS sold through EPIC APPS downloaded from YOUR APP MARKETPLACE;

    vi.    the total value in U.S. dollars of EPIC APPS downloaded from YOUR APP MARKETPLACE;

    vii.    the amount that YOU earned in commissions from each download of any

16

EPIC APP, and the effective commission rate on each such transaction;

viii.    the amount that YOU earned in commissions from each sale of any IN-APP PRODUCT through EPIC APPS, and the effective commission rate on each such transaction;

ix.    whether the APP uses any third party service for ADVERTISING; and

x.    to the extent the APP is available for use on a time-of-use basis, the number of minutes of usage of such APP.

## REQUEST FOR PRODUCTION NO. 32:

DOCUMENTS (INCLUDING data) sufficient to show, for each month since 2010 for each APP published on YOUR APP MARKETPLACE(S):

a.    the name of the APP;

b.    the date range during which the APP was available for download on YOUR APP MARKETPLACE(S); and

c.    the price of the APP and any IN-APP PRODUCT associated with the APP on YOUR APP MARKETPLACE(S), INCLUDING any changes to such pricing over time.

## REQUEST FOR PRODUCTION NO. 33:

DOCUMENTS sufficient to show the name of each APP, INCLUDING *Counter-Strike, Day of Defeat, Dota, Half-Life, Left 4 Dead, Portal, and Team Fortress*, that YOU have published in any APP MARKETPLACE, INCLUDING Google Play, the Samsung Galaxy Store, Android Market, DEFENDANT'S iOS and Mac App Stores, the Amazon Appstore, Amazon Underground, the Microsoft Store for Xbox, Windows Store, and Windows Phone Store, the Epic Games Store, Origin, and other online storefronts distributing games and digital content, and YOUR APP MARKETPLACE(S), and for each such APP:

a.    the dates during which the APP was available for download by U.S. consumers from each APP MARKETPLACE;

b.    for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers from each APP MARKETPLACE;

c.      the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, or uses any other method(s) or some combination of the above;

d.      YOUR decision to monetize the APP, INCLUDING why YOU chose the monetization strategy YOU did, and whether that strategy changed over time;

e.      YOUR annual revenues from APP downloads and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available); and

f.      the number of minutes of usage of such APP that took place via a time-based APP MARKETPLACE.

**REQUEST FOR PRODUCTION NO. 34:**

DOCUMENTS sufficient to show the name of each APP (if any) that YOU have made available for direct distribution (i.e., not through an APP MARKETPLACE) to HANDHELD DEVICE users, and for each such APP:

a.      the dates during which the APP was available for direct download to such. consumers;

b.      for each year that the APP was available, the number of times that the APP was downloaded by consumers;

c.      the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, or uses any other method(s) or some combination of the above;

d.      YOUR decision to monetize the APP, INCLUDING why YOU chose the revenue model YOU did, and whether that strategy changed over time; and

e.      YOUR annual revenues from APP downloads and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available).

**REQUEST FOR PRODUCTION NO. 35:**

DOCUMENTS sufficient to show the name of each APP (if any) that YOU have made available for direct distribution (i.e., not through an APP MARKETPLACE) to NON-HANDHELD DEVICE users, and for each such APP:

a.      the dates during which the APP was available for direct download to such. consumers;

b.      for each year that the APP was available, the number of times that the APP was downloaded by consumers;

c.      the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, or uses any other method(s) or some combination of the above;

d.      YOUR decision to monetize the APP, INCLUDING why YOU chose the revenue model YOU did, and whether that strategy changed over time; and

e.      YOUR annual revenues from APP downloads and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available).

**REQUEST FOR PRODUCTION NO. 36:**

DOCUMENTS sufficient to describe YOUR decision to prohibit or allow:

a. "cross-play" (*i.e.*, the extent to which users of an APP can interact with or play against other users of the APP while on different DEVICES), for any particular APP; and/or

b. IN-APP PRODUCTS or EXTERNAL PRODUCTS purchased on one DEVICE to be applied to the same APP on another DEVICE.

**REQUEST FOR PRODUCTION NO. 37:**

For each of YOUR APPS, DOCUMENTS sufficient to show the extent to which game progress achieved on one DEVICE can be applied to the same game on another DEVICE.

19

**REQUEST FOR PRODUCTION NO. 38:**

ALL COMMUNICATIONS between YOU and any NAMED CONSUMER PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 39:**

ALL COMMUNICATIONS between YOU and any NAMED DEVELOPER PLAINTIFF.

**REQUEST FOR PRODUCTION NO. 40:**

ALL COMMUNICATIONS between YOU and any APP DEVELOPER, INCLUDING EPIC CONCERNING:

a.      the DEFENDANT'S iOS App Store, INCLUDING any guidelines, policies, and procedures for the DEFENDANT'S iOS App Store;

b.      policies, practices, and/or procedures for handling and processing payments for the sale of IN-APP PRODUCTS; and

c.      the following ongoing litigation, INCLUDING declarations, anticipated oral testimony, or documentary evidence relating to the same:

      i.      *Pepper v. Apple Inc.*, Case No. 4:11-cv-06714-YGR (N.D. Cal.);

      ii.      *Lawrence v. Apple Inc.*, Case No. 4:19-cv-02852-YGR (N.D. Cal.);

      iii.      *Cameron v. Apple Inc.*, Case No. 419-cv-03074-YGR (N.D. Cal.);

      iv.      *Sermons v. Apple Inc.*, Case No. 4:19-cv-03796-YGR (N.D. Cal.); and

      v.      *Epic Games, Inc. v. Apple Inc.*, Case No. 4:20-cv-05640-YGR (N.D. Cal.).

**REQUEST FOR PRODUCTION NO. 41:**

ALL COMMUNICATIONS between YOU and any DEVICE manufacturer or telecommunications provider (INCLUDING Verizon Wireless, AT&T Mobility, T-Mobile U.S., or Sprint Corporation) CONCERNING:

a.      the presence or risk of any APPS with MALWARE in any APP MARKETPLACE;

b.      any APPS rejected, removed, or hidden from any APP MARKETPLACE;

c.      any APP DEVELOPER for whom YOU have in any way restricted their/its ability to publish APPS in YOUR APP MARKETPLACE;

d.　any discussion or agreement regarding pre-installation of APPS or APP MARKETPLACES on DEVICES; and

e.　any relationship between the ability to install or use a given APP MARKETPLACE on a DEVICE and the attractiveness to consumers of such DEVICE.

**REQUEST FOR PRODUCTION NO. 42:**

ALL COMMUNICATIONS or DOCUMENTS exchanged between YOU and any federal, state, or local governmental entity, either foreign or domestic, INCLUDING any U.S. or state agency, attorney general's office, or congressional committee, CONCERNING any APP MARKETPLACE(S) or the DEFENDANT.

**REQUEST FOR PRODUCTION NO. 43:**

Any rulings, judgments, or findings of fact or law made by any federal, state, or local governmental entity, either foreign or domestic, INCLUDING any U.S. or state agency, attorney general's office, or congressional committee, CONCERNING YOUR APP MARKETPLACE(S) and any allegations or suspicion of any anti-competitive conduct or behavior.

# EXHIBIT 2

1   Jaemin Chang (SBN 232612)
    jchang@foxrothschild.com
2   FOX ROTHSCHILD LLP
    345 California Street, Suite 2200
3   San Francisco, CA 94104-2670
    Telephone:    415.364.5540
4   Facsimile:    415.391.4436

5   Attorneys for non-party Valve Corporation

6

7

8                   UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                        OAKLAND DIVISION

11  EPIC GAMES, INC. v. APPLE INC.          Case Nos.      4:20-CV-05640-YGR
                                                           4:19-CV-03074-YGR
12  CAMERON ET AL. v. APPLE INC.                           4:11-CV-06714-YGR

13  IN RE APPLE IPHONE ANTITRUST           **NON-PARTY VALVE CORPORATION'S**
    LITIGATION                             **RESPONSE AND OBJECTION TO**
14                                         **SUBPOENA TO PRODUCE**
                                           **DOCUMENTS, INFORMATION, OR**
15                                         **OBJECTS OR TO PERMIT INSPECTION**
                                           **OF PREMISES IN A CIVIL ACTION**
16                                         **ISSUED BY APPLE INC.**

17

18

19          Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B), Valve Corporation ("Valve")

20  objects to the production, inspection, or copying of the documents and materials designated in

21  the subpoena served by Defendant Apple Inc. (the "Subpoena").  Valve's objections to the

22  Subpoena include, but are not necessarily limited to, the following:

23                        **GENERAL OBJECTIONS**

24          1.      Valve objects to the Subpoena's instructions and definitions to the extent they

25  exceed the scope of appropriate third-party discovery under the Federal Rules of Civil Procedure,

26  and render the requests vague and ambiguous, overbroad, harassing and unduly burdensome.

27          2.      Valve objects to the Subpoena to the extent it seeks the production of materials

28  that are in the possession, custody, or control of parties or persons other than Valve, and to the

    extent the requested materials are equally or more readily available through party discovery

                                        -1-

without imposing burden on a third party.  Many of the documents sought by the Subpoena are available from Apple Inc., Epic Games, Inc., Lawrence Plaintiffs and/or Cameron Plaintiffs (collectively, "Parties") and are more properly obtained from the Parties to the captioned actions. There is no apparent need to discover these materials from non-party Valve, or a justification for imposing burden on a third party when the materials are available through party discovery.  *E.g.*, *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) ("Bystanders should not be drawn into the parties' dispute without some good reason. . . . For example, a party's email provider might well possess emails that would be discoverable from the party herself.  But unless the email provider can offer important information that cannot be obtained from the party directly, there would be no cause for a subpoena against the provider."), *cert. denied*, 140 S. Ct. 672 (2019); *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (affirming district court's order requiring defendant "to seek discovery from its party opponent before burdening the nonparty"); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant.").

3.      Valve objects to the Subpoena to the extent it seeks the production of materials that are publicly available, e.g., on Steam or www.partner.steamgames.com.  The Subpoena imposes an undue burden on a third party when the materials are otherwise available directly to Apple Inc.

4.      Valve objects to the Subpoena on the grounds that its requests are overbroad as to time and subject matter and would require Valve to conduct a time consuming and unduly burdensome search, which will cause Valve to incur significant expense and disruption.  The Subpoena fails to compensate Valve for the time and expense required to respond to the overly broad and burdensome document requests.

5.      Valve objects to the Subpoena to the extent it seeks production of documents protected by the attorney-client privilege, the work product doctrine, or any other applicable doctrines or privileges.

6.      Valve objects to the Subpoena to the extent it seeks to impose a duty on Valve to

Valve's Response and Objection to Subpoena by Apple
117110150.v5

create reports, analyses or compile information that Valve does not create, compile or keep in immediately accessible format in the ordinary course of its business. Valve further objects to the Subpoena to the extent it seeks to require Valve to provide any information beyond what is available to Valve at the present time from a reasonable search of its own records and a reasonable inquiry of its present employees, including information that is not within Valve's possession, custody, or control.

7.      Valve objects to the Subpoena to the extent it calls for the production of documents that contain trade secrets or other highly confidential and proprietary research, development, or commercial or financial information, or to the extent that the documents sought by the Subpoena are subject to confidentiality agreements or obligations with others. Documents sought by the Subpoena are confidential, including many that are highly confidential and should be limited to outside attorneys' eyes only.

8.      Valve objects to the Subpoena's definitions of PERSON, YOU, and YOUR insofar as they include "attorneys" and would require responses from or production of documents by Valve's attorneys. Valve objects to producing any communications, information, documents, or other materials within its attorneys' possession. The definition of YOU and YOUR also includes "predecessor," "successor," "agents," "representatives," "consultants," "accountants," and "corporate affiliates," which likely includes persons beyond the control of Valve. The definition of PERSON includes "partner," "corporate parent," "subsidiary," and "affiliate" which likely includes persons beyond the control of Valve. Accordingly, and subject to these objections, Valve interprets the terms PERSON, YOU and YOUR in the Subpoena to mean only Valve and its employees.

9.      Valve objects to the Subpoena's definition of COMMUNICATION is vague, ambiguous, overbroad and renders compliance with the Subpoena unduly burdensome, particularly insofar as it purports to require any custodial email searches.

10.     Valve objects to the Subpoena's definition of DOCUMENT and DOCUMENTS is overbroad and renders compliance with the Subpoena unduly burdensome, particularly insofar as it purports to require any custodial email searches.

Valve's Response and Objection to Subpoena by Apple

117110150.v5

11.     Valve objects to the Subpoena's definition of REPORTS, "any final reports, research, papers, memoranda, presentations, reviews, statistical compilations, or other analyses," as overbroad and unduly burdensome. Accordingly, and subject to these objections, Valve interprets the term REPORTS in the Subpoena to mean final reports, papers, memoranda or statistical compilations generated as a result of formal analyses undertaken by Valve.

12.     Valve objects to the Subpoena's definition of STEAM LINK "YOUR APP for any DEVICE" as unintelligible, vague and ambiguous, overbroad, and unduly burdensome, particularly because Apple Inc. defines "APP" to include any Valve software.

13.     Valve objects to the Subpoena to the extent that it calls for the search and production of electronically stored information (ESI) that is not reasonably tailored to the needs of the above-captioned actions.  In circumstances where ESI is responsive to a particular request, Valve will conduct a reasonable search pursuant to agreed upon or Court ordered parameters.

14.     Valve objects to the Subpoena's instruction no. 2 as it includes DOCUMENTS and information from "YOUR present and former attorneys, investigators, accountants, agents, representatives, or other PERSONS acting on YOUR behalf."  This instruction and the defined terms used therein render the Subpoena impermissibly broad and unduly burdensome, including seeking disclosure of documents and information protected by attorney-client privilege, work product immunity, trade secrets and other doctrines.  Based on its objections, Valve will produce responsive materials only from Valve and its employees.

15.     Valve objects to the Subpoena's instruction no. 8 to the extent that it requires information beyond Fed. R. Civ. P. Rule 45(e)(2).

16.     Valve objects to the Subpoena's instruction no. 11 as the relevant time period (2008 to the present) is vastly overbroad, unduly burdensome, harassing and does not take reasonable steps to avoid imposing undue burden and expense on Valve, as required by Fed. R. Civ. P. Rule 45(d)(1).

17.     Valve objects to the Subpoena's instruction no. 12 as it reiterates the definition of PERSON to include "attorneys."  Valve also incorporates its objections to instruction no. 8.

18.     Valve objects to the Subpoena's instruction no. 14 as Rule 26(e) of the Federal

1    Rules of Civil Procedure does not apply to Valve as it is a non-party.

2        19.    Valve objects to the Subpoena as overly broad as to scope and unduly

3    burdensome insofar as it seeks information or materials regarding any operations or activities

4    outside the United States.

5        20.    Valve objects to producing documents at the time and place requested by the

6    propounding party.  Valve will make its responsive documents available for inspection or will

7    produce responsive documents at a time and date to be mutually agreed upon by counsel.

8        21.    Valve reserves all other objections.  Neither Valve's agreement to produce

9    documents nor its agreement to search for documents responsive to the Subpoena shall imply

10   that responsive documents exist within its possession, custody or control.

11   **SPECIFIC OBJECTIONS**

12   **REQUEST FOR PRODUCTION NO. 1:**

13       REPORTS comparing the distribution of APPS through any APP MARKETPLACE,

14   INCLUDING Google Play, the Samsung Galaxy Store, Android Market, DEFENDANT'S iOS

15   and Mac App Stores, the Amazon Appstore, Amazon Underground, the Microsoft Store for

16   Xbox, Windows Store, and Windows Phone Store, the Epic Games Store, Origin, and online

17   storefronts distributing games and digital content for Xbox, PlayStation, and Nintendo, and

18   YOUR APP MARKETPLACE(S), INCLUDING:

19       a.    the past or present benefits or costs of distribution in each APP

20   MARKETPLACE;

21       b.    past or present fees and commission rates charged by each APP

22   MARKETPLACE, INCLUDING how such fees and commission rates affect the attractiveness

23   of any APP MARKETPLACE to APP DEVELOPERS;

24       c.    past or present security or privacy protections offered in each APP

25   MARKETPLACE;

26       d.    past or present APP REVIEW and approval procedures and practices in each APP

27   MARKETPLACE;

28       e.    past or present tools for APP DEVELOPERS in each APP MARKETPLACE;

Valve's Response and Objection to Subpoena by Apple

117110150.v5

  f. past or present relative ease or difficulty of updating APPS in each APP MARKETPLACE;

  g. past or present market share calculations or estimates for APP MARKETPLACES, INCLUDING the definitions used to perform those calculations;

  h. past or present decision to distribute YOUR APPS on a particular APP MARKETPLACE;

  i. contemplated, planned, or actual distribution of YOUR APPS directly (i.e., not through an APP MARKETPLACE); and

  j. past or present APP maintenance activities in each APP MARKETPLACE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

  Subject to and in addition to General Objections, Valve objects to Request Nos. 1-3, including their subparts, as overly broad in time and in scope, unduly burdensome and not proportional to the needs of the cases.  Valve further objects to these requests as overly broad and unduly burdensome insofar as they would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business.  Valve further objects to these requests (particularly Request No. 1), as overly broad in scope and unduly burdensome insofar as they seek information regarding Valve "APPS" shipped on Apple devices, which information is already in Apple's possession, see, e.g., https://apps.apple.com/us/developer/valve/id495369751.  Valve also objects to these requests to the extent they seek production of documents that are protected by attorney-client and work product privileges or otherwise not relevant to the claims and defenses at issue in the captioned actions.  Valve further objects to these requests insofar as they would call for Valve to produce any source code, which is highly confidential and which Valve declines to do.  Moreover, Valve objects to these requests to the extent that many or all of the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor.  Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of

these requests.

**REQUEST FOR PRODUCTION NO. 2:**

DOCUMENTS sufficient to show with respect to YOUR APP MARKETPLACE(S):

a.     the total yearly amount remitted to YOU from sales of APPS and IN-APP PRODUCTS (by APP and method of monetization, if available);

b.     any estimates of or accounting for annual ADVERTISING revenue attributable to YOUR MARKETPLACE (by APP, if available);

c.     any estimates of or accounting for YOUR annual revenues from sales of EXTERNAL PRODUCTS attributable to YOUR APP MARKETPLACE (by APP and method of monetization, if available);

d.     any estimates of or accounting for annual revenues (other than the foregoing) attributable to YOUR APP MARKETPLACE (by APP and method of monetization, if available); and

e.     any estimates of or accounting for annual earnings, income, or profit (whether gross or net) attributable to YOUR APP MARKETPLACE (by APP and method of monetization, if available).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Subject to and in addition to General Objections, Valve objects to Request Nos. 1-3, including their subparts, as overly broad in time and in scope, unduly burdensome and not proportional to the needs of the cases.  Valve further objects to these requests as overly broad and unduly burdensome insofar as they would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business.  Valve further objects to these requests (particularly Request No. 1), as overly broad in scope and unduly burdensome insofar as they seek information regarding Valve "APPS" shipped on Apple devices, which information is already in Apple's possession, see, e.g., https://apps.apple.com/us/developer/valve/id495369751. Valve also objects to these requests to the extent they seek production of documents that are protected by attorney-client and work product privileges or otherwise not relevant to the claims

Valve's Response and Objection to Subpoena by Apple

117110150.v5

and defenses at issue in the captioned actions.  Valve further objects to these requests insofar as they would call for Valve to produce any source code, which is highly confidential and which Valve declines to do.  Moreover, Valve objects to these requests to the extent that many or all of the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor.  Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of these requests.

**REQUEST FOR PRODUCTION NO. 3:**

REPORTS CONCERNING YOUR contemplated, planned, or actual development and/or operation of YOUR APP MARKETPLACE(S), INCLUDING:

a.      , YOUR decision to build each such APP MARKETPLACE;

b.      YOUR decision to use a particular revenue model in each such APP MARKETPLACE; and

c.      YOUR decision to develop each such APP MARKETPLACE for specific operating systems.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Subject to and in addition to General Objections, Valve objects to Request Nos. 1-3, including their subparts, as overly broad in time and in scope, unduly burdensome and not proportional to the needs of the cases.  Valve further objects to these requests as overly broad and unduly burdensome insofar as they would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business.  Valve further objects to these requests (particularly Request No. 1), as overly broad in scope and unduly burdensome insofar as they seek information regarding Valve "APPS" shipped on Apple devices, which information is already in Apple's possession, see, e.g., https://apps.apple.com/us/developer/valve/id495369751. Valve also objects to these requests to the extent they seek production of documents that are protected by attorney-client and work product privileges or otherwise not relevant to the claims

Valve's Response and Objection to Subpoena by Apple

117110150.v5

and defenses at issue in the captioned actions.  Valve further objects to these requests insofar as they would call for Valve to produce any source code, which is highly confidential and which Valve declines to do.  Moreover, Valve objects to these requests to the extent that many or all of the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor.  Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of these requests.

**REQUEST FOR PRODUCTION NO. 4:**

REPORTS CONCERNING comparisons of the number, identity, genre, quality, and/or popularity of APPS available for download from YOUR APP MARKETPLACE(S) and APPS available for download from other APP MARKETPLACE(S) or available on different DEVICES.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Subject to and in addition to General Objections, Valve objects to this request to the extent it seeks user-specific information or infringe on users' privacy or personal information and/or invades any right to privacy under any applicable state or federal law or constitutional provision.  Valve further objects to this request as massively overbroad and unduly burdensome insofar as it requires Valve to review millions of transactions and data from millions of user accounts.  Valve further objects to this request as overly broad and unduly burdensome as phrased, and insofar as it would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business.  Valve also objects to this request as unduly burdensome insofar as they seek information that is publicly available.  Valve further objects to this request as overly broad in scope and unduly burdensome insofar as they seek information regarding Valve "APPS" shipped on Apple devices, which information is already in Apple's possession, see, e.g., https://apps.apple.com/us/developer/valve/id495369751.  Valve also objects to this request to the extent it seeks production of documents that are not relevant to the claims

Valve's Response and Objection to Subpoena by Apple

and defenses at issue in the captioned actions and are not proportional to the needs of the cases.

Moreover, Valve objects to this request to the extent that many or all of the documents sought

contain trade secrets or highly confidential, business, financial, proprietary, or commercially

sensitive information, particularly insofar as such information is sought by a potential business

competitor.  Valve invites the propounding party to meet and confer to identify with specificity

the categories of documents it seeks and to narrow the scope of this request.

**REQUEST FOR PRODUCTION NO. 5:**

REPORTS sufficient to show the percentage of APPS purchased directly from YOUR

APP MARKETPLACE(S) versus the percentage of APPS purchased from third parties,

INCLUDING from GAME KEYS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Subject to and in addition to General Objections, Valve objects to this request to the

extent it seeks user-specific information or infringe on users' privacy or personal information

and/or invades any right to privacy under any applicable state or federal law or constitutional

provision.  Valve further objects to this request as massively overbroad and unduly burdensome

insofar as it requires Valve to review millions of transactions and data from millions of user

accounts.  Valve further objects to this request as overly broad and unduly burdensome as

phrased, and insofar as it would require Valve to create new documents, information, or analyses

that are not kept in the ordinary course of business or to provide information in a form other than

that kept in the ordinary course of business.  Valve also objects to this request as unduly

burdensome insofar as they seek information that is publicly available.  Valve further objects to

this request as overly broad in scope and unduly burdensome insofar as they seek information

regarding Valve "APPS" shipped on Apple devices, which information is already in Apple's

possession, see, e.g., https://apps.apple.com/us/developer/valve/id495369751.  Valve also objects

to this request to the extent it seeks production of documents that are not relevant to the claims

and defenses at issue in the captioned actions and are not proportional to the needs of the cases.

Moreover, Valve objects to this request to the extent that many or all of the documents sought

contain trade secrets or highly confidential, business, financial, proprietary, or commercially

1   sensitive information, particularly insofar as such information is sought by a potential business

2   competitor.  Valve invites the propounding party to meet and confer to identify with specificity

3   the categories of documents it seeks and to narrow the scope of this request.

4   **REQUEST FOR PRODUCTION NO. 6**

5       DOCUMENTS CONCERNING STEAMOS INCLUDING the development of

6   STEAMOS, COMMUNICATIONS about and with DEVICE manufacturers CONCERNING

7   STEAMOS, and REPORTS sufficient to show STEAMOS utilization.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

9       Subject to and in addition to General Objections, Valve objects to this request the extent

10  it seeks user-specific information or infringes on users' privacy or personal information and/or

11  invades any right to privacy under any applicable state or federal law or constitutional provision.

12  Valve further objects to this request as massively overbroad and unduly burdensome insofar as it

13  requires Valve to review millions of transactions and data from millions of user accounts.  Valve

14  objects to this request as overly broad and unduly burdensome as phrased, and insofar as it

15  would require Valve to create new documents, information, or analyses that are not kept in the

16  ordinary course of business or to provide information in a form other than that kept in the

17  ordinary course of business.  Valve also objects to this request to the extent it seeks production of

18  documents that are not relevant to the claims and defenses at issue in the captioned actions and

19  are not proportional to the needs of the cases.  Valve further objects to this request insofar as it

20  calls for production of any source code, which Valve declines to do as described above in its

21  General Objections.  Moreover, Valve objects to this request to the extent that many or all of the

22  documents sought contain trade secrets or highly confidential, business, financial, proprietary, or

23  commercially sensitive information, particularly insofar as such information is sought by a

24  potential business competitor.  Valve invites the propounding party to meet and confer to

25  identify with specificity the categories of documents it seeks and to narrow the scope of this

26  request.

27  //

28  //

117110150.v5

**REQUEST FOR PRODUCTION NO. 7:**

DOCUMENTS and COMMUNICATIONS CONCERNING the availability and usage of YOUR APP MARKETPLACE(S), INCLUDING STEAM, and YOUR APP(S), INCLUDING STEAM LINK, on DEFENDANT'S iOS operating system, DEFENDANT'S DEVICES, and DEFENDANT'S APP MARKETPLACE, INCLUDING DOCUMENTS and COMMUNICATIONS CONCERNING the publication of STEAM LINK on DEFENDANT'S APP MARKETPLACE as summarized in a June 4, 2018 article, available at https://www.reuters.com/article/us-apple-steam/apple-issues-new-app-store-rules-aimed-at-streaming-pc-based-games-idUSKCN1J034K.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Subject to and in addition to General Objections, Valve objects to this request to the extent it seeks user-specific information or infringe on users' privacy or personal information and/or invades any right to privacy under any applicable state or federal law or constitutional provision. Valve further objects to this request as massively overbroad and unduly burdensome insofar as it requires Valve to review millions of transactions and data from millions of user accounts. Valve further objects to this request as overly broad and unduly burdensome as phrased, and insofar as it would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business. Valve also objects to this request as unduly burdensome insofar as they seek information that is publicly available at https://store.steampowered.com/steamlink/about/, https://store.steampowered.com/remoteplay and https://partner.steamgames.com/doc/ features/remoteplay. Valve further objects to this request as overly broad in scope and unduly burdensome insofar as they seek information regarding Valve "APPS" shipped on Apple devices, which information is already in Apple's possession, see, e.g., https://apps.apple.com/us/developer/valve/id495369751. Valve also objects to this request to the extent it seeks production of documents that are not relevant to the claims and defenses at issue in the captioned actions and are not proportional to the needs of the cases. Moreover, Valve objects to this request to the extent that many or all of the documents sought

Valve's Response and Objection to Subpoena by Apple

117110150.v5

1  contain trade secrets or highly confidential, business, financial, proprietary, or commercially

2  sensitive information, particularly insofar as such information is sought by a potential business

3  competitor.  Valve invites the propounding party to meet and confer to identify with specificity

4  the categories of documents it seeks and to narrow the scope of this request.

5  **REQUEST FOR PRODUCTION NO. 8:**

6       DOCUMENTS and COMMUNICATIONS CONCERNING the development,

7  distribution, and utilization of YOUR APP(S), INCLUDING STEAM LINK, and REPORTS

8  sufficient to show any tendency for consumers to download YOUR APP(S) on any DEVICES.

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

10       Subject to and in addition to General Objections, Valve objects to this request as overly

11  broad and unduly burdensome as phrased, and insofar as it would require Valve to create new

12  documents, information, or analyses that are not kept in the ordinary course of business or to

13  provide information in a form other than that kept in the ordinary course of business.  Valve

14  further objects to the phrase "tendency for consumers" as used in this request as vague,

15  ambiguous, overbroad, harassing and unduly burdensome.  Valve also objects to this request to

16  the extent it seeks user-specific information or infringes on users' privacy or personal

17  information and/or invades any right to privacy under any applicable state or federal law or

18  constitutional provision.  Valve further objects to this request as massively overbroad and unduly

19  burdensome insofar as it requires Valve to review millions of transactions and data from millions

20  of user accounts.  Valve also objects to these requests as unduly burdensome insofar as they seek

21  information that is publicly available, e.g., at https://store.steampowered.com/steamlink/about/,

22  https://store.steampowered.com/remoteplay or https://partner.steamgames.com/doc/

23  features/remoteplay.  Valve also objects to this request to the extent it seeks production of

24  documents that are not relevant to the claims and defenses at issue in the captioned actions and

25  are not proportional to the needs of the cases.  Moreover, Valve objects to this request to the

26  extent that many or all of the documents sought contain trade secrets or highly confidential,

27  business, financial, proprietary, or commercially sensitive information, particularly insofar as

28  such information is sought by a potential business competitor.  Valve invites the propounding

party to meet and confer to identify with specificity the categories of documents it seeks and to

narrow the scope of this request.

**REQUEST FOR PRODUCTION NO. 9:**

COMMUNICATIONS CONCERNING whether consumers are willing to purchase a DEVICE

with a different operating system or from a different DEVICE manufacturer than they already

own and any switching costs they many consider, INCLUDING the value of any APPS

previously purchased that the consumer cannot operate on the new DEVICE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Subject to and in addition to General Objections, Valve objects to this request to the

extent it seeks user-specific information or infringe on users' privacy or personal information

and/or invades any right to privacy under any applicable state or federal law or constitutional

provision.  Valve further objects to this request as massively overbroad and unduly burdensome

insofar as it requires Valve to review millions of transactions and data from millions of user

accounts.  Valve further objects to this request as overly broad and unduly burdensome as

phrased, and insofar as it would require Valve to create new documents, information, or analyses

that are not kept in the ordinary course of business or to provide information in a form other than

that kept in the ordinary course of business.  Valve also objects to this request as unduly

burdensome insofar as they seek information that is publicly available at

https://steamcommunity.com/games/221410/ announcements/detail/1696055855739350561.

Valve also objects to this request to the extent it seeks production of documents that are not

relevant to the claims and defenses at issue in the captioned actions and are not proportional to

the needs of the cases.  Moreover, Valve objects to this request to the extent that many or all of

the documents sought contain trade secrets or highly confidential, business, financial,

proprietary, or commercially sensitive information, particularly insofar as such information is

sought by a potential business competitor.  Valve invites the propounding party to meet and

confer to identify with specificity the categories of documents it seeks and to narrow the scope of

this request.

*//*

**REQUEST FOR PRODUCTION NO. 10:**

DOCUMENTS sufficient to show any efforts undertaken by YOU to attract or incentivize APP DEVELOPERS to develop APPS for distribution to YOUR APP MARKETPLACE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Subject to and in addition to General Objections, Valve objects to this request as overly broad in time and in scope.   Moreover, Valve objects to this request to the extent that many or all of the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor.  Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of this request.

**REQUEST FOR PRODUCTION NO.  11:**

DOCUMENTS created by YOU CONCERNING competition between or among APP MARKETPLACES, INCLUDING any DOCUMENTS describing competition regarding STEAM, YOUR strategy related to actual or potential competitors to STEAM, and YOUR assessment of the market share for STEAM, INCLUDING any analysis performed of any actual or potential competitor to STEAM, such as analysis of any actual or potential competitor's market share, APP pricing, commissions, product design, product functionality, APP promotion, privacy or security policies, and/or APP REVIEW policies or procedures.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Subject to and in addition to General Objections, Valve objects to this request as overly broad and unduly burdensome as phrased, and insofar as it would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business.  Valve also objects to this request to the extent it seek production of documents that are protected by attorney-client or work product privileges, or documents that are not relevant to the claims and defenses at issue in the captioned actions and are not proportional to the needs of the cases.

1  Moreover, Valve objects to this request to the extent that many or all of the documents sought

2  contain trade secrets or highly confidential, business, financial, proprietary, or commercially

3  sensitive information, particularly insofar as such information is sought by a potential business

4  competitor.  Valve invites the propounding party to meet and confer to identify with specificity

5  the categories of documents it seeks and to narrow the scope of this request.

6  **REQUEST FOR PRODUCTION NO. 12:**

7  DOCUMENTS and COMMUNICATIONS CONCERNING any security breaches or

8  privacy concerns relating to YOUR APP MARKETPLACE(S), INCLUDING those reported in

9  an November 11, 2011 BBC News article, available at https://vvww.bbc.com/news/technology-

10  15690187, an May 31, 2018 Vice article available at,

11  https://www.vice.com/en/article/9k8qv5/steam-exploit-left-users- vulnerable-for- 10-years, and

12  an August 9, 2019 Forbes article, available at

13  https://www.forhes.com/site,s/daveywinder/2019/08/09/critical-steam-security-warning-issued-

14  for-72-million-windows-10-gamersi?sh=56130b6e35el.

15  **RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

16  Subject to and in addition to General Objections, Valve objects to this request to the

17  extent that many or all of the documents sought contain trade secrets or confidential, business,

18  financial, proprietary, law enforcement, or commercially sensitive information, particularly

19  insofar as such information is sought by a potential business competitor.  Valve further objects to

20  this request on the grounds that it seeks documents protected by attorney-client, work product,

21  common interest and/or litigation privileges.  Valve also objects to this request to the extent it

22  seeks production of documents that are not relevant to the claims and defenses at issue in the

23  captioned actions and are not proportional to the needs of the cases.  Valve objects to this request

24  to the extent it infringes on users' privacy or personal information and/or invades any right to

25  privacy under any applicable state or federal law or constitutional provision.  Valve objects to

26  this request as overly broad in time and in scope and unduly burdensome as phrased, and insofar

27  as it would require Valve to create new documents, information, or analyses that are not kept in

28  the ordinary course of business or to provide information in a form other than that kept in the

Valve's Response and Objection to Subpoena by Apple
117110150.v5

1  ordinary course of business.  Based on its objections, Valve will not produce documents in

2  response to this request.

3  **REQUEST FOR PRODUCTION NO. 13:**

4      DOCUMENTS sufficient to show YOUR agreements or contracts with APP

5  DEVELOPERS, INCLUDING any agreements or contracts with EPIC, effective during the

6  period that YOU have operated any APP MARKETPLACE, INCLUDING any contracts,

7  guidelines, or rules setting forth the terms and conditions under which APP DEVELOPERS may

8  distribute APPS through YOUR APP MARKETPLACE(S).

9  **RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

10     Subject to and in addition to General Objections, Valve objects to this request as overly

11  broad and unduly burdensome as phrased, and insofar as they would require Valve to create new

12  documents, information, or analyses that are not kept in the ordinary course of business or to

13  provide information in a form other than that kept in the ordinary course of business.  Valve also

14  objects to this request as unduly burdensome insofar as they seek information that is publicly

15  available, e.g., on Steam or www.partner.steamgames.com.  Valve further objects to this request

16  to the extent it seeks production of documents that are protected by attorney-client or work

17  product privileges, or documents that are not relevant to the claims and defenses at issue in the

18  captioned actions and are not proportional to the needs of the cases.  Moreover, Valve objects to

19  this request to the extent that many or all of the documents sought contain trade secrets or highly

20  confidential, business, financial, proprietary, or commercially sensitive information, particularly

21  insofar as such information is sought by a potential business competitor.  Valve invites the

22  propounding party to meet and confer to identify with specificity the categories of documents it

23  seeks and to narrow the scope of this request.

24  **REQUEST FOR PRODUCTION NO. 14:**

25     DOCUMENTS sufficient to show any annual fee(s) or registration fee(s) paid by APP

26  DEVELOPERS in order to develop and publish APPS in YOUR APP MARKETPLACE(S).

27  **RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

28     Subject to and in addition to General Objections, Valve objects to this request as overly

broad and unduly burdensome as phrased, and insofar as they would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business. Valve also objects to this request as unduly burdensome insofar as they seek information that is publicly available, e.g., on Steam or www.partner.steamgames.com. Valve further objects to this request to the extent it seeks production of documents that are protected by attorney-client or work product privileges, or documents that are not relevant to the claims and defenses at issue in the captioned actions and are not proportional to the needs of the cases. Moreover, Valve objects to this request to the extent that many or all of the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor. Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of this request.

## REQUEST FOR PRODUCTION NO. 15:

DOCUMENTS sufficient to show any commissions and/or transaction fees charged by YOU when a user makes a purchase from YOUR APP MARKETPLACE(S) or from an APP downloaded from the same, INCLUDING:

a.      any commissions and/or transaction fees charged on the sale of APPS or IN-APP PRODUCTS and any exemptions from or limitations on such commissions or fees; and

b.      the impact on any commission rates and/or transaction fees charged by YOU when a user makes a purchase through the use of any discount, virtual currency, or particular payment method, INCLUDING any particular credit card.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

Subject to and in addition to General Objections, Valve objects to this request as overly broad and unduly burdensome as phrased, and insofar as they would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business. Valve also objects to this request as unduly burdensome insofar as they seek information that is publicly

Valve's Response and Objection to Subpoena by Apple

available, e.g., on Steam or www.partner.steamgames.com.  Valve further objects to this request to the extent it seeks production of documents that are protected by attorney-client or work product privileges, or documents that are not relevant to the claims and defenses at issue in the captioned actions and are not proportional to the needs of the cases.

Valve also objects to this request to the extent it seeks user-specific information or infringe on users' privacy or personal information and/or invades any right to privacy under any applicable state or federal law or constitutional provision.  Valve further objects to this request as massively overbroad and unduly burdensome insofar as they require Valve to review millions of transactions and data from millions of user accounts. Moreover, Valve objects to this request to the extent that many or all of the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor.  Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of this request.

**REQUEST FOR PRODUCTION NO. 16:**

REPORTS CONCERNING YOUR decision to change any commission rates on APPS or IN-APP PRODUCTS distributed through YOUR APP MARKETPLACE(S).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Subject to and in addition to General Objections, Valve objects to this request as overly broad and unduly burdensome as phrased, and insofar as it would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business.  Valve also objects to this request to the extent it seek production of documents that are protected by attorney-client or work product privileges, or documents that are not relevant to the claims and defenses at issue in the captioned actions and are not proportional to the needs of the cases.  Moreover, Valve objects to this request to the extent that many or all of the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a potential business

117110150.v5

1   competitor.  Valve invites the propounding party to meet and confer to identify with specificity

2   the categories of documents it seeks and to narrow the scope of this request.

3   **REQUEST FOR PRODUCTION NO. 17:**

4        DOCUMENTS sufficient to show any rules or policies CONCERNING the price at

5   which APPS or IN-APP PRODUCTS may, be offered for, sale in YOUR APP.

6   MARKETPLACE(S), INCLUDING:

7        a.     any requirements that prices end in a specific number (*e.g.*, ".99");

8        b.     any variations in pricing based on the use of payment methods by consumers

9   (e.g., discounts); and

10        c.     any requirements that prices for APPS in YOUR APP MARKETPLACE(S) be

11   linked to prices charged for the same APPS in other APP MARKETPLACES other than YOURS

12   (e.g., "most favored nation" requirements).

13   **RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

14        Subject to and in addition to General Objections, Valve objects to this request as overly

15   broad and unduly burdensome as phrased, and insofar as they would require Valve to create new

16   documents, information, or analyses that are not kept in the ordinary course of business or to

17   provide information in a form other than that kept in the ordinary course of business.  Valve also

18   objects to this request as unduly burdensome insofar as they seek information that is publicly

19   available, e.g., on Steam or www.partner.steamgames.com.  Valve further objects to this request

20   to the extent it seeks production of documents that are protected by attorney-client or work

21   product privileges, or documents that are not relevant to the claims and defenses at issue in the

22   captioned actions and are not proportional to the needs of the cases.  Moreover, Valve objects to

23   this request to the extent that many or all of the documents sought contain trade secrets or highly

24   confidential, business, financial, proprietary, or commercially sensitive information, particularly

25   insofar as such information is sought by a potential business competitor.  Valve invites the

26   propounding party to meet and confer to identify with specificity the categories of documents it

27   seeks and to narrow the scope of this request.

28   *//*

**REQUEST FOR PRODUCTION NO. 18:**

All DOCUMENTS and REPORTS CONCERNING YOUR decision that "Starting from October 1, 2018 (i.e. revenues prior to that date are not included), when a game makes over $10 million on Steam, the revenue share for that application will adjust to 75 percent/25 percent on earnings beyond $10M. At $50 million, the revenue share will adjust to 80 percent/20 percent on earnings beyond $50M," as described in a December 18, 2018 blog post, available at, https://www.vice.com/en/article/vbaxkb/fortnite-is-so-popular-it-could-end-steams-decade-long-dominance.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Subject to and in addition to General Objections, Valve objects to this request as overly broad and unduly burdensome as phrased, and insofar as it would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business. Valve also objects to this request to the extent it seek production of documents that are protected by attorney-client or work product privileges, or documents that are not relevant to the claims and defenses at issue in the captioned actions and are not proportional to the needs of the cases. Moreover, Valve objects to this request to the extent that many or all of the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor. Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of this request.

**REQUEST FOR PRODUCTION NO. 19:**

DOCUMENTS CONCERNING the amount and value of services provided by STEAM to APP consumers, INCLUDING APP REVIEW, store curation and social networking.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Subject to and in addition to General Objections, Valve objects to this request as overly broad and unduly burdensome as phrased, and insofar as it would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to

provide information in a form other than that kept in the ordinary course of business.  Valve also

objects to the phrases "the amount and value", unspecified "services provided by STEAM to

APP consumers," "store curation" and "social networking" as used in this request as vague,

ambiguous, overbroad, unduly burdensome.  Valve further objects to this request as overly broad

in time and in scope and unduly burdensome insofar as it would require Valve to create new

documents, information, or analyses that are not kept in the ordinary course of business or to

provide information in a form other than that kept in the ordinary course of business.  Valve also

objects to these requests as unduly burdensome insofar as they seek information that is publicly

available, e.g., at https://store.steampowered.com/ or https://help.steampowered.com/en/.  Valve

also objects to this request to the extent it seeks production of documents that are not relevant to

the claims and defenses at issue in the captioned actions and are not proportional to the needs of

the cases.  Valve further objects to this request insofar as it calls for production of any source

code, which Valve declines to do as described above in its General Objections.  Moreover, Valve

objects to these requests to the extent that many or all of the documents sought contain trade

secrets or highly confidential, business, financial, proprietary, or commercially sensitive

information, particularly insofar as such information is sought by a potential business competitor.

Valve invites the propounding party to meet and confer to identify with specificity the categories

of documents it seeks and to narrow the scope of this request.

**REQUEST FOR PRODUCTION NO. 20:**

DOCUMENTS sufficient to show any marketing, services, assistance, or support YOU

provide for APP DEVELOPERS, INCLUDING APP development tools, application

programming interfaces ("APIs"), programming tools, technical support, opportunities for testing

APPS before they are released to the consumers, marketing, payment processing, refund

processing, and security measures.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Subject to and in addition to General Objections, Valve objects to this request as overly

broad and unduly burdensome as phrased, and insofar as they would require Valve to create new

documents, information, or analyses that are not kept in the ordinary course of business or to

117110150.v5

provide information in a form other than that kept in the ordinary course of business. Valve also objects to this request as unduly burdensome insofar as they seek information that is publicly available, e.g., on Steam or www.partner.steamgames.com. Valve further objects to this request to the extent it seeks production of documents that are protected by attorney-client or work product privileges, or documents that are not relevant to the claims and defenses at issue in the captioned actions and are not proportional to the needs of the cases. Moreover, Valve objects to this request to the extent that many or all of the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor. Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of this request.

**REQUEST FOR PRODUCTION NO. 21:**

DOCUMENTS sufficient to show, for each year since 2010, any costs, you incurred to process payments for purchases of APPS and IN-APP PRODUCTS in YOUR APP MARKETPLACE(S).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Subject to and in addition to General Objections, Valve objects to this request as overly broad and unduly burdensome as phrased, particularly insofar as it includes a ten year time frame, and insofar as it would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business. Valve also objects to this request to the extent it seeks production of documents that are not relevant to the claims and defenses at issue in the captioned actions and are not proportional to the needs of the cases. Moreover, Valve objects to this request to the extent that many or all of the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor. Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of this request.

Valve's Response and Objection to Subpoena by Apple

117110150.v5

**REQUEST FOR PRODUCTION NO. 22:**

DOCUMENTS sufficient to show YOUR policies, practices, and/or procedures for handling and processing payments for the sale of IN-APP PRODUCTS in APPS distributed through YOUR APP MARKETPLACE, INCLUDING DOCUMENTS sufficient to show whether YOU require APPS distributed through YOUR APP MARKETPLACE to use a payment and purchase functionality provided by YOU to facilitate purchases of IN-APP PRODUCTS, and if so, whether YOU have ever departed from such requirement with respect to EPIC APPS or any other APP DEVELOPER'S APPS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Subject to and in addition to General Objections, Valve objects to this request as disjunctive, compound, unintelligible, overly broad in time and in scope and unduly burdensome as phrased, and insofar as it would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business. Valve also objects to this request as unduly burdensome insofar as it seeks information that is publicly available, e.g., on Steam or www.partner.steamgames.com. Valve also objects to this request to the extent it seeks production of documents are not relevant to the claims and defenses at issue in the captioned actions and are not proportional to the needs of the cases. Moreover, Valve objects to this request to the extent that many or all of the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor. Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of this request.

**REQUEST FOR PRODUCTION NO. 23:**

DOCUMENTS, INCLUDING COMMUNICATIONS with EPIC, CONCERNING EPIC's submission of *Fortnite* for distribution through YOUR APP MARKETPLACE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Subject to and in addition to General Objections, Valve objects to this request as seeking

1    discovery from a non-party that is equally or more readily available through party discovery

2    without imposing burden on a third party, as further described in Valve's General Objection No.

3    2, which is incorporated here by reference.  Valve objects to this request as overly broad insofar

4    as it seeks communications regarding matters not at issue in these cases, e.g., technical

5    communications.  Valve invites the propounding party to meet and confer to identify with

6    specificity the categories of documents it seeks and to narrow the scope of this request.

7    **REQUEST FOR PRODUCTION NO. 24:**

8    DOCUMENTS sufficient to show, for STEAM and any other services that offer access to

9    APPS that YOU offer to U.S. users on any DEVICE:

10   a.    the dates during which the service was available to U.S. consumers;

11   b.    for each year that the service was available, the number U.S. consumers who

12   subscribed to or otherwise used it;

13   c.    the method(s) used to monetize the service, INCLUDING, but not limited to,

14   ADVERTISING and subscriptions;

15   d.    YOUR decision to monetize the service, INCLUDING why YOU chose the

16   monetization strategy YOU did, and whether that strategy changed over time; and

17   e.    YOUR annual revenues from the service (by type of monetization, if available).

18   **RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

19   Subject to and in addition to General Objections, Valve objects to this request as overly

20   broad and unduly burdensome as phrased, and insofar as it would require Valve to create new

21   documents, information, or analyses that are not kept in the ordinary course of business or to

22   provide information in a form other than that kept in the ordinary course of business.  Valve

23   further objects to these requests as overly broad in scope and unduly burdensome insofar as they

24   seek information regarding Valve "APPS" shipped on Apple devices, which information is

25   already in Apple's possession, see, e.g., https://apps.apple.com/us/ developer/valve/id495369751.

26   Valve also objects to this request to the extent it seeks production of documents that are not

27   relevant to the claims and defenses at issue in the captioned actions and are not proportional to

28   the needs of the cases.  Moreover, Valve objects to this request to the extent that many or all of

Valve's Response and Objection to Subpoena by Apple

the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor.  Subject to and without waiving the foregoing objections, Valve cannot comply with portions of this request seeking information or documents related to advertising as it does not advertise on Steam or in any Valve games.  Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of this request.

## REQUEST FOR PRODUCTION NO. 25:

DOCUMENTS sufficient to describe YOUR efforts to REVIEW APPS made through YOUR APP MARKETPLACE(S) or any other source, INCLUDING:

a.       guidelines, policies, and/or procedures for REVIEWING APPS;

b.       separately by year and operating system, any costs YOU incurred or resources YOU expended in REVIEWING APPS;

c.       the efficacy of any such REVIEW of APPS, INCLUDING the number of instances of MALWARE YOU detected, the number of instances of MALWARE YOUR REVIEW failed to detect, and consumer and APP DEVELOPER COMMUNICATIONS regarding any such REVIEW; and

d.       actual or intended efforts to communicate to users that YOU have REVIEWED such APPS.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 25:

Subject to and in addition to General Objections, Valve objects to this request as overly broad and unduly burdensome as phrased, and insofar as it would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business.  Valve also objects to this request to the extent it seeks production of documents that are protected by attorney-client or work product privileges, or documents that are not relevant to the claims and defenses at issue in the captioned actions and are not proportional to the needs of the cases.  Valve also objects to this request as unduly burdensome insofar as they seek information that is

117110150.v5

publicly available, e.g., on Steam.  Moreover, Valve objects to this request to the extent that many or all of the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor.  Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of this request.

**REQUEST FOR PRODUCTION NO. 26:**

DOCUMENTS describing the organizational structure of, and/or listing personnel working within any division or unit of YOUR business that is responsible for APP distribution and/or YOUR APP MARKETPLACE(S) (INCLUDING APP REVIEW), INCLUDING any organizational charts or employee directories pertaining to such business unit(s) or division(s).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Subject to and in addition to General Objections, Valve objects to this request as overly broad and unduly burdensome insofar as it would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business.  Valve also objects to this request as unduly burdensome insofar as they seek information that is publicly available, e.g., at www.valvesoftware.com/en/people.  Subject to and without waiving the foregoing, Valve cannot comply with this request as it does not maintain organizational charts or employee directories.

**REQUEST FOR PRODUCTION NO. 27:**

DOCUMENTS sufficient to show the following per-user averages for consumers associated with YOUR APP MARKETPLACE separately for each year since 2010:

a.      annual spending on APPS and IN-APP PRODUCTS;

b.      annual amounts received by YOU due to ADVERTISING shown to the user;

c.      the portion of annual spending that is attributable to credits, discounts, or virtual currencies, INCLUDING gift cards, promotional codes, or the use of any particular credit card.

//

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Subject to and in addition to General Objections, Valve objects to this request as overly broad and unduly burdensome as phrased, and insofar as it would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business. Valve further objects to this request as massively overbroad and unduly burdensome insofar as it requires Valve to review millions of transactions and data from millions of user accounts. Moreover, Valve objects to this request to the extent that many or all of the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor. Subject to and without waiving the foregoing objections, Valve cannot comply with portions of this request seeking information or documents related to advertising as it does not advertise on Steam or in any Valve games. Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of this request.

**REQUEST FOR PRODUCTION NO. 28:**

REPORTS CONCERNING the existence of MALWARE, INCLUDING any efforts to measure or quantify the number of APPS that contained MALWARE, the number of downloads of APPS that, contained MALWARE and the impact of such MALWARE in:

a.       APPS offered by YOUR APP MARKETPLACE(S); and

b.       APPS offered by APP MARKETPLACES other than YOUR APP MARKETPLACE(S).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Subject to and in addition to General Objections, Valve objects to this request as overly broad and unduly burdensome as phrased, and insofar as it would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business. Valve also objects to this request to the extent it seek production of documents that are protected by

117110150.v5

attorney-client or work product privileges, or documents that are not relevant to the claims and

defenses at issue in the captioned actions and are not proportional to the needs of the cases.

Moreover, Valve objects to this request to the extent that many or all of the documents sought

contain trade secrets or highly confidential, business, financial, proprietary, or commercially

sensitive information, particularly insofar as such information is sought by a potential business

competitor. Valve invites the propounding party to meet and confer to identify with specificity

the categories of documents it seeks and to narrow the scope of this request.

**REQUEST FOR PRODUCTION NO. 29:**

DOCUMENTS sufficient to show, for each NAMED CONSUMER PLAINTIFF:

a. the number of APPS downloaded by the NAMED CONSUMER PLAINTIFF

from YOUR APP MARKETPLACE(S);

b. for each APP downloaded by the NAMED CONSUMER PLAINTIFF from

YOUR APP MARKETPLACE(S):

       i. the identity of the APP;

      ii. the date of download;

     iii. the price paid for the download;

     iv. the date that any IN-APP PRODUCT associated with the APP was

         purchased and the price paid for the IN-APP PRODUCT;

     v. whether the APP uses a third party services for ADVERTISING; and

     vi. to the extent the APP is available for use on a time-of-use basis, the

         number of minutes of usage of such APP.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Subject to and in addition to General Objections, Valve objects to Request Nos. 29 and

30 as overbroad and unduly burdensome as phrased and insofar as they would require Valve to

create new documents, information, or analyses that are not kept in the ordinary course of

business or to provide information in a form other than that kept in the ordinary course of

business. Valve also objects insofar as these requests seek user-specific information or infringes

on users' privacy or personal information and/or invades any right to privacy under any

1 | applicable state or federal law or constitutional provision.  Subject to and without waiving its
2 | objections, Valve cannot comply with these requests without further identifying information for
3 | the persons named in each request, including email address used on their Steam accounts and
4 | Steam ID or account name and (for developers) the name(s) under which each named developer
5 | plaintiff submitted software for distribution via Steam.

6 | **REQUEST FOR PRODUCTION NO. 30:**

7 | DOCUMENTS sufficient to show, for each NAMED DEVELOPER PLAINTIFF:

8 | a.    whether the NAMED DEVELOPER PLAINTIFF has published APPS on YOUR
9 | APP MARKETPLACE(S);

10 | b.    any identification or account number associated with the NAMED DEVELOPER
11 | PLAINTIFF; and

12 | c.    for each APP published by the NAMED DEVELOPER PLAINTIFF on YOUR
13 | APP MARKETPLACE(S):

14 | i.    the name of the APP;

15 | ii.    the date range during which the APP was available for download on
16 | YOUR APP MARKETPLACE(S);

17 | iii.    the number of times the APP has been downloaded from YOUR APP
18 | MARKETPLACE(S) each year;

19 | iv.    the price of the APP and any IN-APP PRODUCT associated with the APP
20 | on YOUR APP MARKETPLACE(S), INCLUDING any changes to such
21 | pricing over time;

22 | v.    the total amount of money remitted by YOU to the NAMED
23 | DEVELOPER PLAINTIFF for purchases of such APP or associated IN-
24 | APP PRODUCT(S);

25 | vi.    whether the APP uses any third party service for ADVERTISING; and

26 | vii.    to the extent the APP is available for use on a time-of-use basis, the
27 | number of minutes of usage of such APP.

28 | //

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Subject to and in addition to General Objections, Valve objects to Request Nos. 29 and 30 as overbroad and unduly burdensome as phrased and insofar as they would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business. Valve also objects insofar as these requests seek user-specific information or infringes on users' privacy or personal information and/or invades any right to privacy under any applicable state or federal law or constitutional provision. Subject to and without waiving its objections, Valve cannot comply with these requests without further identifying information for the persons named in each request, including email address used on their Steam accounts and Steam ID or account name and (for developers) the name(s) under which each named developer plaintiff submitted software for distribution via Steam.

**REQUEST FOR PRODUCTION NO. 31:**

DOCUMENTS (INCLUDING data) sufficient to show, for each month since 2010:

a. whether EPIC has published APPS on YOUR APP MARKETPLACE(S);

b. any identification or account number associated with EPIC;

c. for each APP published by EPIC on YOUR APP MARKETPLACE(S):

    i. the name of the APP;

    ii. the date range during which the APP was available for download on YOUR APP MARKETPLACE(S);

    iii. the number of times the APP has been downloaded from YOUR APP MARKETPLACE(S) each year;

    iv. the price of the APP and any IN-APP PRODUCT associated with the APP on YOUR APP MARKETPLACE(S), INCLUDING any changes to such pricing over time;

    v. the total value in U.S. dollars of IN-APP PRODUCTS sold through EPIC APPS downloaded from YOUR APP MARKETPLACE;

vi.     the total value in U.S. dollars of EPIC APPS downloaded from YOUR APP MARKETPLACE;

vii.    the amount that YOU earned in commissions from each download of any EPIC APP, and the effective commission rate on each such transaction;

viii.   the amount that YOU earned in commissions from each sale of any IN-APP PRODUCT through EPIC APPS, and the effective commission rate on each such transaction;

ix.     whether the APP uses any third party service for ADVERTISING; and

x.      to the extent the APP is available for use on a time-of-use basis, the number of minutes of usage of such APP.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 31:

Subject to and in addition to General Objections, Valve objects to this request insofar as it seeks discovery from a non-party that is equally or more readily available through party discovery without imposing burden on a third party, as further described in Valve's General Objection No. 2, which is incorporated here by reference. Valve objects to this request as overly broad and unduly burdensome as phrased, and insofar as it would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business. Valve further objects to this request insofar as it calls for information that is publicly available, e.g., through Steam or through Apple's own examination of Epic's software. Moreover, Valve objects to this request to the extent that many or all of the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor. Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of this request.

## REQUEST FOR PRODUCTION NO. 32:

DOCUMENTS (INCLUDING data) sufficient to show, for each month since 2010 for each APP published on YOUR APP MARKETPLACE(S):

Valve's Response and Objection to Subpoena by Apple

a.       the name of the APP;

b.       the date range during which the APP was available for download on YOUR APP MARKETPLACE(S); and

c.       the price of the APP and any IN-APP PRODUCT associated with the APP on YOUR APP MARKETPLACE(S), INCLUDING any changes to such pricing over time.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Subject to and in addition to General Objections, Valve objects to this request as massively overbroad in scope and time and unduly burdensome as there have been tens of thousands of games available on Steam during the requested time period. Valve also objects to this request as overly broad and unduly burdensome insofar as the request requires Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business. Valve further objects to this request insofar as it calls for information that is publicly available, e.g., through Apple's own review of the Steam store. Valve also objects to this request to the extent it seeks production of documents that are not relevant to the claims and defenses at issue in the captioned actions and are not proportional to the needs of the cases.

**REQUEST FOR PRODUCTION NO. 33:**

DOCUMENTS sufficient to show the name of each APP, INCLUDING *Counter-Strike, Day of Defeat, Dota, Half-Life, Left 4 Dead, Portal, and Team Fortress*, that YOU have published in any APP MARKETPLACE, INCLUDING Google Play, the Samsung Galaxy Store, Android Market, DEFENDANT'S iOS and Mac App Stores, the Amazon Appstore, Amazon Underground, the Microsoft Store for Xbox, Windows Store, and Windows Phone Store, the Epic Games Store, Origin, and other online storefronts distributing games and digital content, and YOUR APP MARKETPLACE(S), and for each such APP:

a.,      the dates daring which the APR VASS available fora. download by U.S. consumers from each APP MARKETPLACE;

b.       for each year that the APP was available, the number of times that the APP was downloaded by U.S. consumers from each PP MARKETPLACE;

117110150.v5

1       c.     the method(s) used (if any) to monetize the APP, INCLUDING, but not limited

2  to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of

3  EXTERNAL PRODUCTS, features ADVERTISING, or uses any other method(s) or some

4  combination of the above;

5       d.     YOUR decision to monetize the APP, INCLUDING why YOU chose the

6  monetization strategy YOU did, and whether that strategy changed over time;

7       e.     YOUR annual revenues from APP downloads and IN-APP PRODUCTS

8  attributable to such distribution (by APP and by type of monetization, if available); and

9       f.     the number of minutes of usage of such APP that took place via a time-based APP

10  MARKETPLACE.

11 **RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

12       Subject to and in addition to General Objections, Valve objects to this request as overly

13  broad and unduly burdensome as phrased, and insofar as it would require Valve to create new

14  documents, information, or analyses that are not kept in the ordinary course of business or to

15  provide information in a form other than that kept in the ordinary course of business.  Valve

16  further objects to this request as vague and ambiguous as to whether "APP MARKETPLACE" as

17  used in this request is limited to digital distribution, and interprets this request to exclude brick

18  and mortar distributors. Valve further objects to this request as overly broad in scope and unduly

19  burdensome insofar as it seeks information regarding Valve "APPS" shipped on Apple devices,

20  which information is already in Apple's possession, see, e.g.,

21  https://apps.apple.com/us/developer/valve/id495369751.  Valve also objects to this request to the

22  extent it seeks production of documents that are not relevant to the claims and defenses at issue

23  in the captioned actions and are not proportional to the needs of the cases.  Moreover, Valve

24  objects to this request to the extent that many or all of the documents sought contain trade secrets

25  or highly confidential, business, financial, proprietary, or commercially sensitive information,

26  particularly insofar as such information is sought by a potential business competitor.  Valve

27  invites the propounding party to meet and confer to identify with specificity the categories of

28  documents it seeks and to narrow the scope of this request.

Valve's Response and Objection to Subpoena by Apple

**REQUEST FOR PRODUCTION NO. 34:**

DOCUMENTS sufficient to show the name of each APP (if any) that YOU have made available for direct distribution (i.e., not through an APP MARKETPLACE) to HANDHELD DEVICE users, and for each such APP:

a.      the dates during which the APP was available for direct download to such consumers;

b.      for each year that the APP was available, the number of times that the APP was downloaded by consumers;

c.      the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, or uses any other method(s) or some combination of the above;

d.      YOUR decision to monetize the APP, INCLUDING why YOU chose the revenue model YOU did and whether that strategy changed over time; and

e.      YOUR annual revenues from APP downloads and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Subject to and in addition to General Objections, Valve objects to Request Nos. 34 and 35 as overly broad and unduly burdensome as phrased, and insofar as it would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business. Valve further objects to these requests as vague and ambiguous as to whether "direct distribution" as used in these requests is limited to digital distribution, and interprets these requests to exclude brick and mortar distributors. Valve further objects to these requests as overly broad in scope and unduly burdensome insofar as they seek information regarding Valve "APPS" shipped on Apple devices, which information is already in Apple's possession, see, e.g., https://apps.apple.com/us/developer/valve/id495369751.  Valve also objects to these requests to the extent they seeks production of documents that are not relevant to the claims and defenses at

issue in the captioned actions and are not proportional to the needs of the cases. Moreover, Valve objects to these requests to the extent that many or all of the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor. Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of these requests.

**REQUEST FOR PRODUCTION NO. 35:**

DOCUMENTS sufficient to show the name of each APP (if any) that YOU have made available for direct distribution (i.e., not through an APP MARKETPLACE) to NON-HANDHELD DEVICE users, and for each such APP:

a. the dates during which the APP was available for direct download to such consumers;

b. for each year that the APP was available, the number of times that the APP was downloaded by consumers;

c. the method(s) used (if any) to monetize the APP, INCLUDING, but not limited to, whether the APP charges for APP downloads, sells IN-APP PRODUCTS, permits use of EXTERNAL PRODUCTS, features ADVERTISING, or uses any other method(s) or some combination of the above;

d. YOUR decision to monetize the APP, INCLUDING why YOU chose the revenue model YOU did, and whether that strategy changed over time; and

e. YOUR annual revenues from APP downloads and IN-APP PRODUCTS attributable to such distribution (by APP and by type of monetization, if available).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Subject to and in addition to General Objections, Valve objects to Request Nos. 34 and 35 as overly broad and unduly burdensome as phrased, and insofar as it would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business. Valve further objects to these requests as vague and ambiguous as to whether "direct

distribution" as used in these requests is limited to digital distribution, and interprets these requests to exclude brick and mortar distributors. Valve further objects to these requests as overly broad in scope and unduly burdensome insofar as they seek information regarding Valve "APPS" shipped on Apple devices, which information is already in Apple's possession, see, e.g., https://apps.apple.com/us/developer/valve/id495369751.  Valve also objects to these requests to the extent they seeks production of documents that are not relevant to the claims and defenses at issue in the captioned actions and are not proportional to the needs of the cases.  Moreover, Valve objects to these requests to the extent that many or all of the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor. Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of these requests.

**REQUEST FOR PRODUCTION NO. 36:**

DOCUMENTS sufficient to describe YOUR decision to prohibit or allow:

a.      "cross-play" (*i.e.*, the extent to which users of an APP can interact with or play against other users of the APP while on different DEVICES), for any particular APP; and/or

b.      IN-APP PRODUCTS or EXTERNAL PRODUCTS purchased on one DEVICE to be applied to the same APP on another DEVICE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Subject to and in addition to General Objections, Valve objects to Request No. 36 as overly broad and unduly burdensome as phrased, and insofar as it would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business.  Valve also objects to this request to the extent it seeks production of documents that are not relevant to the claims and defenses at issue in the captioned actions and are not proportional to the needs of the cases.  Moreover, Valve objects to this request to the extent that many or all of the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a

Valve's Response and Objection to Subpoena by Apple

117110150.v5

potential business competitor.  Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of this request.

**REQUEST FOR PRODUCTION NO.  37**

For each of YOUR APPS, DOCUMENTS sufficient to show the extent to which game progress achieved on one DEVICE can be applied to the same game on another DEVICE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Subject to and in addition to General Objections, Valve objects to Request No. 37 insofar as it calls for production of any source code, which Valve declines to do as described above in its General Objections.  Valve also objects to this request as overly broad and unduly burdensome as phrased, and insofar as it would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business.  Valve also objects to this request as unduly burdensome insofar as it seeks information that is publicly available, e.g., through use of Valve's games, which are all readily accessible via Steam, or at https://support.steampowered.com/kb_article.php?ref=6736-QEIG-8941.  Valve also objects to this request to the extent it seeks production of documents that are not relevant to the claims and defenses at issue in the captioned actions and are not proportional to the needs of the cases.  Moreover, Valve objects to this request to the extent that many or all of the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor.  Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of this request.

**REQUEST FOR PRODUCTION NO. 38:**

ALL COMMUNICATIONS between YOU and any NAMED CONSUMER PLAINTIFF.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Subject to and in addition to General Objections, Valve objects to Request Nos. 38 and

39 as seeking discovery from a non-party that is equally or more readily available through party discovery without imposing burden on a third party, as further described in Valve's General Objection No. 2, which is incorporated here by reference. Valve further objects to these requests as overly broad in time and in scope. Valve also objects to these requests to the extent they seek production of documents that are not relevant to the claims and defenses at issue in the captioned actions and are not proportional to the needs of the cases. Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of these requests.

**REQUEST FOR PRODUCTION NO. 39:**

ALL COMMUNICATIONS between YOU and any NAMED DEVELOPER PLAINTIFF.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Subject to and in addition to General Objections, Valve objects to Request Nos. 38 and 39 as seeking discovery from a non-party that is equally or more readily available through party discovery without imposing burden on a third party, as further described in Valve's General Objection No. 2, which is incorporated here by reference. Valve further objects to these requests as overly broad in time and in scope. Valve also objects to these requests to the extent they seek production of documents that are not relevant to the claims and defenses at issue in the captioned actions and are not proportional to the needs of the cases. Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of these requests.

**REQUEST FOR PRODUCTION NO. 40:**

ALL COMMUNICATIONS between YOU and any APP DEVELOPER, INCLUDING EPIC CONCERNING:

a.      the DEFENDANT'S iOS App Store, INCLUDING any guidelines, policies, and procedures for the DEFENDANT'S iOS App Store;

b.      policies, practices, and/or procedures for handling and processing payments for the sale of.IN APP PRODUCTS; and

117110150.v5

c.      the following ongoing litigation, INCLUDING declarations, anticipated oral

testimony, or documentary evidence relating to the same:

        i.      *Pepper v. Apple Inc.*, Case No. 4:11-cv-06714-YGR (N.D. Cal.);

        ii.      *Lawrence v. Apple Inc.*, Case No. 4:19-cv-02852-YGR (N.D. Cal.);

        iii.      *Cameron v. Apple Inc.*, Case No. 419-cv-03074-YGR (N.D. Cal.);

        iv.      *Sermons v. Apple Inc.*, Case No. 4:19-cv-03796-YGR (N.D. Cal.); and

        v.      *Epic Games, Inc. v. Apple Inc.*, Case No. 4:20-cv-05640-YGR (N.D. Cal.).

## RESPONSE TO REQUEST FOR PRODUCTION NO. 40:

Subject to and in addition to General Objections, Valve objects to this request as seeking

discovery from a non-party that is equally or more readily available through party discovery

without imposing burden on a third party, as further described in Valve's General Objection No.

2, which is incorporated here by reference.  Valve also objects to this request as overly broad in

time and in scope and unduly burdensome insofar as the request purports to require Valve to

search for "ALL COMMUNICATIONS" with any developer of the tens of thousands of games

available on Steam for multiple topics.  Valve also objects to this request to the extent it seeks

production of documents that are not relevant to the claims and defenses at issue in the captioned

actions and are not proportional to the needs of the cases.  Valve invites the propounding party to

meet and confer to identify with specificity the categories of documents it seeks and to narrow

the scope of this request.

## REQUEST FOR PRODUCTION NO. 41:

ALL COMMUNICATIONS between YOU and any DEVICE manufacturer or

telecommunications provider (INCLUDING Verizon Wireless, AT&T Mobility, T-Mobile U.S.,

or Sprint Corporation) CONCERNING:

a.      the presence or risk of any APPS with MALWARE in any APP

MARKETPLACE;

b.      any APPS rejected, removed, or hidden from any APP MARKETPLACE:

b.      any APP DEVELOPER for whom YOU have in any way restricted their/its

ability to publish APPS in YOUR APP MARKETPLACE;

d.      any discussion or agreement regarding pre-installation of APPS or APP MARKETPLACES on DEVICES; and

e.      any relationship between the ability to install or use a given APP MARKETPLACE on a DEVICE and the attractiveness to consumers of such DEVICE.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Subject to and in addition to General Objections, Valve objects to this request as overly broad in time and in scope and unduly burdensome insofar as the request purports to require Valve to search for "ALL COMMUNICATIONS" with numerous manufacturers and telecommunications providers over several years regarding multiple topics.  Valve also objects to this request to the extent it seeks production of documents that are not relevant to the claims and defenses at issue in the captioned actions and are not proportional to the needs of the cases. Moreover, Valve objects to this request to the extent that many or all of the documents sought contain trade secrets or highly confidential, business, financial, proprietary, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor.  Valve invites the propounding party to meet and confer to identify with specificity the categories of documents it seeks and to narrow the scope of this request.

**REQUEST FOR PRODUCTION NO. 42:**

ALL COMMUNICATIONS or DOCUMENTS exchanged between YOU and any federal, state, or local governmental entity, either foreign or domestic, INCLUDING any U.S. or state agency, attorney general's office, or congressional committee, CONCERNING any APP MARKETPLACE(S) or the DEFENDANT.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Subject to and in addition to General Objections, Valve objects to Request No. 42 and 43 as overly broad in time and in scope and unduly burdensome, particularly insofar as they seek production of "ALL COMMUNICATIONS or DOCUMENTS."  Valve also objects to these requests insofar as they seek information beyond the United States as further described in Valve's General Objection No. 19, which is incorporated here by reference.  Valve further objects to these requests to the extent that many or all of the documents sought contain trade

117110150.v5

secrets or confidential, business, financial, proprietary, law enforcement, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor. Valve also objects to these requests to the extent it seeks production of documents that are not relevant to the claims and defenses at issue in the captioned actions and are not proportional to the needs of the cases. Valve objects to this request to the extent it calls for user-specific information, infringes on users' privacy or personal information and/or invades any right to privacy under any applicable state or federal law or constitutional provision. Valve objects to this request as overly broad in time and in scope and unduly burdensome as phrased, and insofar as it would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business. Based on its objections, Valve will not produce documents in response to this request.

**REQUEST FOR PRODUCTION NO. 43:**

Any rulings, judgments, or findings of fact or law made by any federal, state, or local governmental entity, either foreign or domestic, INCLUDING any U.S. or state agency, attorney general's office, or congressional committee, CONCERNING YOUR APP MARKETPLACE(S) and any allegations or suspicion of any anti-competitive conduct or behavior.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Subject to and in addition to General Objections, Valve objects to Request No. 42 and 43 as overly broad in time and in scope and unduly burdensome, particularly insofar as they seek production of "ALL COMMUNICATIONS or DOCUMENTS." Valve also objects to these requests insofar as they seek information beyond the United States as further described in Valve's General Objection No. 19, which is incorporated here by reference. Valve further objects to these requests to the extent that many or all of the documents sought contain trade secrets or confidential, business, financial, proprietary, law enforcement, or commercially sensitive information, particularly insofar as such information is sought by a potential business competitor. Valve also objects to these requests to the extent it seeks production of documents that are not relevant to the claims and defenses at issue in the captioned actions and are not

proportional to the needs of the cases.  Valve objects to this request to the extent it calls for user-specific information, infringes on users' privacy or personal information and/or invades any right to privacy under any applicable state or federal law or constitutional provision.  Valve objects to this request as overly broad in time and in scope and unduly burdensome as phrased, and insofar as it would require Valve to create new documents, information, or analyses that are not kept in the ordinary course of business or to provide information in a form other than that kept in the ordinary course of business.  Based on its objections, Valve will not produce documents in response to this request.


Dated:  December 23, 2020                    FOX ROTHSCHILD LLP

                                             By: _____
                                                 Jaemin Chang
                                                 Attorneys for non-party Valve Corporation

Valve's Response and Objection to Subpoena by Apple
117110150.v5

## PROOF OF SERVICE

I am employed in the County of San Francisco, State of California.  I am over the age of eighteen years and not a party to this action.  My business address is:  Fox Rothschild LLP, 345 California Street, Suite 2200, San Francisco, CA 94104-2670.

On the date shown below, I served the following document(s):

**NON-PARTY VALVE CORPORATION'S RESPONSE AND OBJECTION TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION ISSUED BY APPLE INC.**

on the interested party(ies) in this action as follows:

### SEE ATTACHED SERVICE LIST

☑ **BY EMAIL:**  I electronically served the above document(s) to the email address of the addressee(s) listed above.

I declare under penalty of perjury that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.  Executed on December 23, 2020 at San Francisco, California.

_____
Elisabeth Paulsen

-2-

**SERVICE LIST**

THEODORE J. BOUTROUS JR. (SBN 132099)
tboutrous@gibsondunn.com
RICHARD J. DOREN (SBN 124666)
rdoren@gibsondunn.com
DANIEL G. SWANSON (SBN 116556)
dswanson@gibsondunn.com
JAY P. SRINIVASAN (SBN 181471)
jsrinivasan@gibsondunn.com
JASON C. LO
jlo@gibsnodunn.com
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

VERONICA S. LEWIS *(pro hac vice)*
vlewis@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue, Suite 1100
Dallas, TX 75201
Telephone: 214.698.3100
Facsimile: 214.571.2936

CYNTHIA E. RICHMAN *(pro hac vice)*
crichman@gibsondunn.com
ANNA L. CASEY *(pro hac vice)*
acasey@gibsondunn.com
MARK A. PERRY
mperry@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: 202.955.8500
Facsimile: 202.467.0539

ETHAN D. DETTMER
edettmer@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: 415-393-8200
Facsimile: 415-986-5309

**Attorneys for Apple, Inc.**

PAUL J. RIEHLE (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center, 27th Floor
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

**Attorneys for Epic Games, Inc.**

CHRISTINE A. VARNEY *(pro hac vice)*
cvarney@cravath.com
KATHERINE B. FORREST *(pro hac vice)*
kforrest@cravath.com
GARY A. BORNSTEIN *(pro hac vice)*
gbornstein@cravath.com
YONATAN EVEN *(pro hac vice)*
yeven@cravath.com
LAUREN A. MOSKOWITZ *(pro hac vice)*
lmoskowitz@cravath.com
M. BRENT BYARS *(pro hac vice)*
mbyars@cravath.com
JOE WESLEY EARNHARDT *(pro hac vice)*
wearnhardt@cravath.com
JOHN I. KARIN *(pro hac vice)*
jkarin@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

**Attorneys for Epic Games, Inc.**

HANNAH CANNOM
hcannom@wscllp.com
BETHANY M. STEVENS
bstevens@wscllp.com
**WALKER STEVENS CANNON LLP**
500 Molino Street, Suite 118
Los Angeles, CA 90012
Telephone: 213-337-9972

**Attorneys for Apple Inc.**

E. JOSHUA ROSENKRANZ (pro hac vice)
jrosenkranz@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
51 West 52nd Street
New York, NY 10019-6142
Telephone: 212.506.5000
Facsimile: 212.506.5151

WILLIAM F. STUTE (pro hac vice)
wstute@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
1152 15th Street, N.W.
Washington, DC 20005-1706
Telephone: 202.339.8400
Facsimile: 202.339.8500

**Attorneys for Apple Inc.**

DAVID R. EBERHART
deberhart@omm.com
ANNA TRYON PLETCHER
apletcher@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: 415-984-8700
Facsimile: 415-984-8701

KATRINA M. ROBSON
krobson@omm.com
EVAN N. SCHLOM
eschlom@omm.com
ELENA ZARABOZO
ezarabozo@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, N.W.
Washington, DC 20006
Telephone: 202-220-5052
Facsimile: 202-383-5414

SCOTT A. SCHAEFFER
sschaeffer@omm.com
**O'MELVENY & MYERS LLP**
Plaza 66, 37th Floor
1266 Nanjing Road West
Shanghai 200040, China
Telephone: 213-430-6000

**Attorneys for Apple, Inc.**

KAREN HOFFMAN LENT
Karen.lent@skadden.com
**SKADDEN ARPS SLATE MEACHER FLOM LLP**
One Manhattan West
New York, NY 10001
Telephone: 212-735-3000

**Attorneys for Apple, Inc.**

JOHN J. CALANDRA
jcalandra@mwe.com
NICOLE LAUREN CASTLE
ncastle@mwe.com
PETER JOHN SACRIPANTI
psacripanti@mwe.com
**MCDERMOTT WILL & EMERY LLP**
340 Madison Avenue
New York, NY 10173
Telephone: 212-547-5489
Facsimile: 212-547-5444

MICHELLE S. LOWERY
mslowery@mwe.com
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
Telephone: 310-551-9309

ELIZABETH A. RODD
erodd@mwe.com
**MCDERMOTT WILL & EMERY LLP**
200 Clarendon Street, Floor 58
Boston, MA 02116
Telephone: 617-535-4040
Facsimile: 617-535-3800

**Attorneys for Apple, Inc.**

117427531.v1

BENJAMIN HANS DIESSEL *(pro hac vice)*
bdiessel@wiggin.com
**WIGGIN AND DANA LLP**
One Century Tower
P. O. Box 1832
New Haven, CT 06508
Telephone: 203-498-4400
Facsimile: 203-782-2889

ROBERT SETH HOFF *(pro hac vice)*
rhoff@wiggin.com
**WIGGIN AND DANA LLP**
281 Tresser Boulevard
Stamford, CT 06901
Telephone: 203-363-7626

**Attorneys for Epic Games, Inc.**

ROBERT F. LOPEZ
robl@hbsslaw.com
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: 206-623-7292
Facsimile: 206-623-0594

**Attorney for Donald Cammeron (interested party)**

117427531.v1